CHARLES T. McMULLIN, administrator, et al., respondents,

*v.*

SARAH N. DOUGHTY, appellant.

[Argued March 7th, 1905.   Decided June 19th, 1905.]

1. The provisions of section 91 of the Chancery act of 1902 confer on the chancellor discretionary power to make an allowance to the counsel of a successful complainant, to be included in the taxed costs, in certain cases.

2. Although there is included in that act no provision for similar allowances to successful defendants, the provisions of section 91 are not thereby rendered obnoxious to any provision of the constitution of the United States or of this state.

3. The practice as to such allowances in cases tried before vice-chancellors indicated.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Grey, who filed the following memorandum:

This cause, after a litigation extending over more than three years, is about coming to a conclusion. All the matters in dispute appear to have been presented and decided except the allowance of a counsel fee. The complainant moves for the allowance of such a fee. It is opposed by counsel for the defendant on several grounds. Argument has been twice heard on the question.

The suit is for the partition of about thirteen thousand acres of land lying in Atlantic county, consisting of one main tract and a number of smaller ones. The complainant is the owner of one undivided fifth and the defendant of four undivided fifths. Actual partition was sought by the complainant. No question has been raised in the cause disputing the complainant's interest, in either quantity or quality, nor has the defendant in any way denied the necessity and propriety of an actual partition.

The defendant's resistance to the allowance of a fee in this partition suit to the counsel for the complainant, is, that the suit was litigated, that the defendant had employed her own counsel, and that the complainant's counsel had not in the conduct of the suit done anything which was beneficial to the defendant.

The object of the suit was, as stated, the obtaining of an actual partition of a large landed estate. The proceedings necessary to bring this result were conducted by the complainant's solicitor. The management of the cause was burdened with the difficulties which attend upon an effort to state, with precise description, the boundaries of extensive tracts of wildland which had been acquired over a long period of time, from various sources, by inexact conveyancing, and to some extent without recording deeds. The muniments of the title to these lands were largely, if not entirely, in the hands of the defendant who was in possession of the family mansion. Her attitude in this cause to the complainant was extremely hostile, and gave rise to many contentions. These disputes did not relate to any differences touching the main object of the suit, the securing to each party an estate in severalty by an actual partition in proportion to her holding. There was no litigation on this point. The accom-

plishment of this result was all important to the defendant—
more valuable to her than to the complainant—for the reason
that the defendant had an interest four times that of the com-
plainant, the value of which was most unfavorably affected by
the fact that it was held in common with the complainant, with
whom the defendant was upon terms of hostility. The benefits
to be derived from the steps taken by the complainant looking to
the obtaining of an actual partition to be made, were accepted
all through the proceedings by the defendant.

The real point of contention between the parties was at all
times the effort of each to obtain the largest possible allowance
for her share, and in the most favorable location, and not a dis-
putation concerning the main object of the suit—the obtaining
for each of an estate in severalty. On this last-named phase of
the case the defendant's counsel rendered no service. What was
done was done by complainant's counsel, and the defendant ac-
cepted the benefit of it, save in the one incident which I will
presently notice.

As the cause proceeded it was disclosed by both parties that
the extent of the lands was so great, and the documentary evi-
dences of title in such a confused condition, that accuracy of
description was almost impossible. The difficulties of the pro-
cedure became so great as to threaten the efficiency of the parti-
tion. At this point, at the invitation of this court, an agreement
upon a description of the lands was made, and on this the first
order for partition was sent to the commissioners. They heard
the parties, who each sharply contended for her full share. The
report when it came in, was challenged by the defendant because
of alleged misconduct of the commissioners, collusion with the
complainant to the defendant's disadvantage, and unfairness and
partiality in the division of the estate. All of these objections
were overruled (see *McMullin* v. *Doughty, 62 N. J. Eq.* '(17
*Dick.*) *252*), and this disposition of them was affirmed on appeal.

After the objections taken had been heard and overruled it
was for the first time discovered that in the first return of the
commissioners there had been set off and valued to the defendant
as part of her share several large tracts of land which did not

belong to the estate, and which, if the defendant had been compelled to accept them, would have done her a great wrong. The inclusion of these outside tracts and their setting off to the defendant as part of her share was a mistake, in which the defendant and her counsel participated up to the point that it was made part of the commissioners' first report. No objections were made to that report on that ground. *McMullin* v. *Doughty, supra.* The mistake was discovered after the argument on the objections to that report had been heard, and it was corrected immediately, with the assent of the complainant. There was no fraud or contrivance about it. But as it was a serious injury to the defendant, the matter was sent back to the commissioners, and they were ordered to make a new division, correcting the error. This they have done by their second return, which is not disputed by either party.

The happening of this error is, however, a ground which, while it should not deprive the complainant's counsel of all right to a counsel fee, should, I think, affect the amount which should be allowed him for his services.

The estate in this case is large and valuable. The difficulties of division have been considerable. The fee should recognize the amount of labor required in the conduct of the suit. The error above referred to was participated in by both parties, but it was the duty of the complainant's counsel to have detected it as he was conducting the suit. His omission to do so has delayed the cause and made necessary another return by the commissioners. In this one incident of the direct proceedings to the creation of an estate in severalty the complainant's counsel was at fault, and his omission was disadvantageous to the defendant. In substantially all the other steps in the cause she received four-fifths benefit, while the complainant got but one-fifth. I am not willing, under these circumstances, to allow such counsel fee as the value and importance of the estate divided would otherwise have justified.

Some question has been raised as to the practice in allowing a counsel fee to the solicitor of the complainant out of the whole estate in cases where the defendant is represented by counsel.

The decision of the chancellor in the recent case of *Kellar* v. *Kellar* (not reported) is cited where he refused to allow a counsel fee to the complainant's counsel in a partition suit in which the defendant had employed counsel and the case had been litigated.

That decision was made before the Chancery act of 1902, section 91, provided that it should be lawful to include in the complainant's costs a counsel fee, to be fixed by the chancellor on final decree.

The chancellor, since the passage of the act of 1902, has indicated that the practice should recognize the change made by that statute, and that in cases in which the complainant is equitably entitled to a decree for costs, the vice-chancellor to whom the cause has been referred should hear the parties on the question of the allowance of a counsel fee to the complainant, and in advising the final decree should report to the chancellor what is a reasonable fee to be allowed. If either party is dissatisfied with the vice-chancellor's allowance, he may, on notice to the other party, apply to the chancellor to fix a proper sum.

The circumstances of this case entitle the complainant to a decree for costs, and the allowance of a counsel fee of $400 to the complainant, to be taxed with his costs, will be advised.

Chancellor Magie filed the following supplemental memorandum:

Vice-Chancellor Grey, to whom this cause was referred, has advised a decree therein containing a blank space for the amount of an allowance to complainant of a counsel fee, to be included in the taxed costs, and has reported to me that $400 is a reasonable sum to be allowed.

This course has been pursued by him under suggestions made by me to all the vice-chancellors as to the practice under the provisions of section 91 of the Chancery act of 1902.

By the terms of that section I have concluded that the legislature has intended to confer on the chancellor discretionary power to make certain allowances, to be included in the com-

plainant's taxed costs, and that it is my duty to consider the application for the exercise of that power. In respect to causes heard by vice-chancellors, I think the application should be primarily made to the vice-chancellor, and that he should report whether any allowance should be made, and what would be a reasonable sum to allow. In order to preserve uniformity in the exercise of such discretion as is conferred on the chancellor, the parties will be heard by me, if desired, in respect to the allowance reported.

In this case the parties have been heard and defendant's counsel objects to any allowance.

The objection is first put on the ground that the legislation in question is obnoxious to constitutional restrictions, either that of the constitution of the United States forbidding any state to deny to any person in its jurisdiction the equal protection of the laws, or that of our constitution forbidding any general law to include any provision of a private, special or local character, or that forbidding the passage of any private, local or special law granting to any individual any exclusive benefit.

His contention is that, by section 91, a benefit is conferred on successful complainants in Chancery suits which is not conferred upon successful defendants.

He supports his contention by numerous cases in the state and federal courts in which legislation conferring power to award allowances to parties in actions against certain corporations, such as railroad companies, or in actions against such corporations for certain tortious acts, has been pronounced invalid.

But the legislation under consideration is capable of being distinguished from that dealt with in the cases cited.

It affects a whole class of litigants, viz., complainants. It does not distinguish among them by reason of the nature of the action, or the character or conduct of the defendants. Why defendants who might be successful in equitable suits are not included in the benefit of this legislation cannot be considered if complainants in such suits form a proper class for such legislation. That they are improperly classified by this act does not seem to me to be so clear that a court of primary jurisdiction

would be justified in pronouncing the legislation for their benefit wholly invalid.

It is further contended that the circumstances do not warrant the allowance recommended. My examination of the case and my consideration of the reasons given by Vice-Chancellor Grey satisfy me that the discretionary power conferred on the chancellor should be exercised, and that the amount allowed is not excessive.

The blank in the advised decree will be filled with the sum reported and the decree signed.

*Mr. Herbert A. Drake,* for the appellant.

*Mr. John D. McMullin,* for the respondents.

PER CURIAM.

The decree appealed from is affirmed, for the reasons stated in the opinion of Vice-Chancellor Grey, and in the opinion of the chancellor supplemental thereto, filed in the court below.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—11.

*For reversal*—None.