[Civil No. 2133.   Filed April 10, 1924.]

[224 Pac. 1057.]

# ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. CHARLES HEAD, Appellee.

1. INTEREST—"INTEREST" DEFINED. — "Interest" is the compensation paid for the use of money.

2. INTEREST—WHEN ALLOWED STATED.—Interest is allowed because of a contract, express or implied, to pay it, or as damages for breach of a contract or violation of some duty.

3. INTEREST—NOT ALLOWED IN TORT CASES WHERE CLAIM IS UNLIQUIDATED AND IN DISPUTE.—In tort cases, interest is added after the claim is liquidated as compensation for detention of the money from the judgment creditor, but if the claim is unliquidated and in dispute no interest is allowed on the theory that the person liable does not know the sum he owes and hence cannot be in default for not paying.

4. CONSTITUTIONAL LAW—INTEREST—ACT ALLOWING 12 PER CENT INTEREST ON JUDGMENT SUSTAINED ON EMPLOYER'S APPEAL UNDER EMPLOYERS' LIABILITY LAW HELD VIOLATION OF FOURTEENTH AMENDMENT. — Civ. Code 1913, paragraph 3161, providing for 12 per cent interest on the amount of judgments against employers under the Employers' Liability Law from the filing of suit until the full amount is paid, where the judgment is sustained on appeal, *held* a violation of Const. U. S. Amend. 14, as requiring an employer unsuccessfully appealing from a judgment against him under such law to pay double the interest required of other judgment debtors, including employers sued under the Workmen's Compensation Act or Lord Campbell's Act, by Civ. Code 1913, paragraph 642, and from the date of filing suit, instead of the date of verdict, as therein provided, for not paying an amount unknown until found by judicial process.

5. INTEREST—SUMS ON WHICH INTEREST COMPUTED.—Interest is computed on sums definitely known or ascertainable by arithmetical computation or on sums adjudicated to be due.

1. See 15 R. C. L. 3.

2. See 15 R. C. L. 6.

3. Allowance of interest on damages for personal injuries, notes, Ann. Cas. 1913B, 207; Ann. Cas. 1914D, 996; 28 L. R. A. (N. S.) 1. See, also, 15 R. C. L. 7.

4. See 6 R. C. L. 369.

5. See 15 R. C. L. 6.

6. STATUTES—ACT IMPOSING 12 PER 'CENT INTEREST ON EMPLOYERS
   UNSUCCESSFULLY APPEALING FROM JUDGMENT UNDER EMPLOYERS'
   LIABILITY LAW HELD SPECIAL LEGISLATION.—Civ. 'Code 1913, para-
   graph 3161, providing for 12 per cent interest on the amount of
   judgments against employers under the Employers' Liability Act
   from the date of filing suit where sustained on the employer's
   appeal, *held* a special law "regulating the rate of interest on
   money."

7. CONSTITUTIONAL LAW—LEGISLATURE'S JUDGMENT AS TO WHETHER
   GENERAL LAW CAN BE MADE APPLICABLE TO GIVEN CONDITION
   GENERALLY FINAL.—The legislature's judgment as to whether a
   general law can be made applicable to a given condition is gen-
   erally final.

8. COSTS—APPELLANT OBTAINING REDUCTION OF JUDGMENT GENERALLY
   ENTITLED TO COSTS. — An appellant successful in reducing the
   amount of the judgment is generally entitled to its costs.

9. COSTS—APPELLANT SECURING REDUCTION IN AMOUNT OF JUDGMENT
   CANNOT 'COMPLAIN OF FAILURE TO INCLUDE COSTS IN AMOUNT RE-
   MAINING.—Where a judgment for plaintiff, in an action under the
   Employers' Liability Law, was affirmed on condition that he re-
   mit $6,500 of the $10,500 awarded, with intent to allow him a
   clear judgment for $4,000, the costs will not be taxed against
   him, and defendant cannot complain of the court's failure to
   make the amount remaining large enough to cover the costs, of
   which defendant got the advantage in the deduction.

On motion for 12 per cent interest on judgment.
Motion denied.

(For opinion in case see *ante*, p. 137, 222 Pac. 1041.)

Mr. G. P. Bullard, for Appellant.

Messrs. Cox & Moore, for Appellee.

ROSS, J.—The appellee obtained a judgment against
the appellant in the sum of $10,500. Upon appeal to
this court the judgment was affirmed on condition
that the appellee would remit $6,500. Thereafter the

---

6. See 6 R. C. L. 417.

8. See 7 R. C. L. 800.

    See 12 C. J. 886, 1172 (1925 Anno.); 15 C. J. 251, 253; 33 C. J.
178, 182, 210, 211, 212, 36 Cyc. 1014.

appellee acquiesced in the order of the court by filing his written consent to the reduction of the judgment to $4,000. He has filed with us a motion asking that there be added to said judgment, as modified, interest at the rate of 12 per cent per annum from the date of filing the suit until the judgment is paid, the suit having been filed April 3, 1922. This motion is based upon paragraph 3161 of Civil Code 1913, and is a part of the chapter entitled "Liability of employers for injuries to workmen in dangerous occupations," and reads as follows:

"In all actions for damages brought under the provisions of this chapter, if the plaintiff be successful in obtaining judgment, and if the defendant appeals to a higher court, and if the plaintiff in the lower court be again successful; and the judgment of the lower court is sustained by the higher court or courts; then, and in that event the plaintiff shall have added to the amount of such judgment by such higher court or courts, interest at the rate of twelve per cent per annum on the amount of such judgment from the date of the filing of the suit in the first instance until the full amount of such judgment is paid."

We have had the same motion before us in several cases and in each and every one have refused to add the interest as requested because we felt that it was placing an unfair and unequal burden upon parties sued under the Employers' Liability Law, who appeal their case to the Supreme Court, and therefore a violation of the Fourteenth Amendment to the federal Constitution, as likewise of the provision in our Constitution which prohibits the legislature from enacting any special law "regulating the rate of interest on money" when a general law can be made applicable. However, because of press of business we have not heretofore stated our reasons for disallowing the interest as provided in paragraph 3161, *supra.*

Recently in the case of *Twohy Bros. Co.* v. *Kennedy,* 295 Fed. 462, in the United States Circuit Court of

Appeals for the Ninth Circuit, said paragraph was held to be constitutional, and the interest therein provided for was allowed. We are cited to that opinion upon this motion as being final and determinative of what we should do in the premises. We shall notice that opinion further on.

Interest is the compensation paid for the use of money. It is allowed on the ground of some contract, express or implied, to pay it, or as damages for the breach of some contract, or the violation of some duty. *Selleck* v. *French,* 1 Conn. 32, 6 Am. Dec. 185; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 8 Ann. Cas. 298, 65 Atl. 134. In cases of torts, such as libel, slander, and actions for damages for personal injuries, interest is added, after the claim is liquidated, as compensation for the detention of the money from the judgment creditor. If the claim is unliquidated and is in dispute no interest is allowed upon the theory that the person liable does not know the sum he owes and therefore can be in no default for not paying. *Cox* v. *McLaughlin,* 76 Cal. 60, 9 Am. St. Rep. 164, 18 Pac. 100; *Curtin* v. *State,* 61 Cal. App. 377, 214 Pac. 1030; *Philbrick* v. *Mundy,* 93 N. J. L. 43, 106 Atl. 361.

The statutes of Arizona provide that all judgments shall bear interest from the time the verdict is rendered (paragraph 642, C. C. 1913) at the legal rate of 6 per cent per annum "unless a different rate is contracted for in writing" (paragraph 3505), except that public service corporations are required to pay 8 per cent per annum on deposits demanded of consumers (paragraph 5523), and except delinquent taxpayers who must pay 10 per cent on delinquent taxes (paragraph 4916), and the state, which is required to pay interest upon its overdue warrants at 5 per cent (chapter 102, Laws 1921). These last classifications, for the purpose of fixing different interest rates than are generally charged for the use of

money, are unquestionably reasonable and well grounded. They need no amplification, for in each case the law bears equally upon all of a class, and the legislative judgment that a special interest rate in such cases is proper should be accepted as final.

However, under the Employers' Liability Law, if a defendant is dissatisfied with the manner in which his case was tried, although he may appeal, as may all other dissatisfied litigants, he does so at the risk of being penalized, in the event he loses in the appellate court, by the imposition of interest at the rate of 12 per cent per annum, not from the date the claim was liquidated by judgment or verdict, but from the date of the filing of the complaint. If the same defendant had been sued under the Workmen's Compensation Act or the Lord Campbell's Act, or on any other account, the judgment would bear interest at the rate of 6 per cent per annum from the rendition of the verdict. The relationship in the Workmen's Compensation Law would be the same, employer and employee, and perhaps more frequently than otherwise the litigation under Lord Campbell's Act would be that growing out of the relation of master and servant or employer and employee. Now it is difficult to see what good reason can exist for imposing a rate of interest twice as high on a judgment obtained under the Employers' Liability Law as one obtained under the Workmen's Compensation Act or Lord Campbell's Act, and dating from the time of the filing of the complaint rather than the date of verdict. Is the classification based upon the incident of the remedy pursued by the employee, rather than upon any distinction in the class of employment, reasonable and well grounded, or is it not extremely arbitrary and capricious?

The rule laid down in *Barbier* v. *Connolly*, 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. Rep. 357 (see, also, Rose's U. S. Notes), is that special burdens "do not

furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions.'' The identity of circumstances or conditions in this case is not made the criteria for the classification, but rather the incident of the remedy selected by the complaining party. As a common-sense proposition, is it giving equal protection to a defendant under the Employers' Liability Law who appeals his case for review, to charge him interest at the rate of 12 per cent from the date of the filing of complaint against him, whereas every other dissatisfied defendant or defeated party may appeal his case and be charged only 6 per cent interest from the date of the rendition of verdict against him? The discrimination is not only in the rate of interest charged, but in the time it begins to run.

In the Twohy Bros. case, relied upon by the movant, there is cited *Louisville R. Co.* v. *Stewart,* 241 U. S. 261, 60 L. Ed. 989, 36 Sup. Ct. Rep. 586 (see, also, Rose's U. S. Notes), as sustaining the right to impose this additional interest. The question there was as to whether the appellate court of Kentucky violated the ''due process'' provision of the Fourteenth Amendment by adding 10 per cent interest to the judgment. But it seems the statute of Kentucky was a general one applying to all defendants alike. The court said:

''But the railroad company obtained a *supersedeas* and the law of the state makes ten per cent the cost of it to all persons if the judgment is affirmed.''

Looking up the statute referred to in the above opinion we find it in *Louisville etc.* v. *Sharp,* 91 Ky. 411, 16 S. W. 86. That statute allows to every judgment creditor whose judgment is superseded 10 per cent damages. It has no favorites, nor does it unduly burden any particular litigant.

A judgment debtor is a judgment debtor, whether he becomes such on a written contract or an implied

contract or on account of the violation of some duty.
His "circumstances and condition" as a litigant, or in
connection with the facts giving a right of action,
may very materially differentiate him and his duties
and rights from others, but after the entry of judg-
ment against him that difference disappears. His
obligation to pay without appealing, if he is an em-
ployer engaged in a hazardous occupation, is no
greater than if he suffered judgment upon a promis-
sory note or for negligence in operating his automo-
bile, or for money had and received as upon an implied
contract. We can see no difference in judgment
debtors, their duties and obligations, upon which to
predicate a classification for the purpose of making
it easier or less expensive for one to appeal his case
than another. Indeed, the legislature has not at-
tempted to allow interest at 12 per cent against all
appellants from judgments for damages occasioned
in hazardous occupations, but only those sued under
the Employers' Liability Law. It does not reach
those sued under the Workmen's Compensation Law
or Lord Campbell's Act, however hazardous the em-
ployment may be.

Other cases cited by the Circuit Court of Appeals
in *Twohy Bros.* v. *Kennedy, supra,* to support its
opinion are cases in which laws allowing the plaintiff
an attorney's fee for instituting and prosecuting the
action have been sustained. For instance, in *Atchi-
son etc. R. Co.* v. *Matthews,* 174 U. S. 96, 43 L. Ed.
909, 19 Sup. Ct. Rep. 609 (see, also, Rose's U. S.
Notes), the court had under consideration an act of
the Kansas legislature providing that in all actions
against any railway for damages by fire caused by
the operating of said railway there should be allowed
plaintiff a reasonable attorney's fee as a part of any
judgment recovered. Because "no other work done
or industry carried on carries with it so much danger
from escaping fire," and because "the purpose of the

statute is not to compel the payment of debts, but to
secure the utmost care on the part of the railroad
companies to prevent the escape of fire from their
moving trains,'' the burden bearing equally upon all
engaged in operating railroads, the classification for
the purpose indicated was held reasonable and just.
As was said in a later case, construing an Arkansas
statute of similar import, the allowance of attorney's
fees to the plaintiff in certain kinds of cases is in the
nature of ''a police regulation designed to promote
the prompt payment of small claims and to discourage
unnecessary litigation in respect to them.''   Also, it
is said:

''*Actor* and *reus* differ in their respective attitudes
towards a litigation; the former has the burden
of seeking the proper jurisdiction and bringing the
proper parties before it, as well as the burden of
proof upon the main issues; and these differences
may be made the basis of distinctive treatment re-
specting the allowance of an attorney's fee as a part
of the costs. *Atchison, Topeka etc. Railroad* v.
*Matthews,* 174 U. S. 96, 43 L. Ed. 909, 19 Sup. Ct.
Rep. 609; *Farmers' etc. Ins. Co.* v. *Dobney,* 189 U. S.
301, 304, 47 L. Ed. 821, 23 Sup. Ct. Rep. 565; *Mc-
Mullin* v. *Doughty,* 68 N. J. Eq. 776, 781, 55 Atl. 115,
284, 64 Atl. 1134.''   *M., K. & T. Ry. Co.* v. *Cade,*
233 U. S. 642, 58 L. Ed. 1135, 34 Sup. Ct. Rep. 678
(see, also, Rose's U. S. Notes).

*St. Louis Iron Mountain etc. R. Co.* v. *Paul,*
173 U. S. 404, 43 L. Ed. 746, 19 Sup. Ct. Rep. 419
(see, also, Rose's U. S. Notes), cited by the federal
circuit court, we state with all deference is not in
point.   In that case the reason, or a cogent reason,
given for upholding the law allowing an employee
wrongfully discharged a continuance of wages until
paid what he had earned, was that the contract of
employment was entered into in view of the law.
The court said:

"This act was purely prospective in its operation. It did not interfere with vested rights, or existing contracts, or destroy, or sensibly encroach upon, the right to contract, although it did impose a duty in reference to the payment of wages actually earned, which restricted future contracts in the particular named."

The decisions in *Missouri K. & T. Ry. Co.* v. *May,* 194 U. S. 267, 48 L. Ed. 971, 24 Sup. Ct. Rep. 638 (see, also, Rose's U. S. Notes), and *Chicago etc. Ry. Co.* v. *Anderson,* 242 U. S. 283, 61 L. Ed. 302, 37 Sup. Ct. Rep. 124, the latter of which is cited by the appellate court, it must be admitted extend the rule of classification, for purposes of regulation and control, very far. In those decisions laws of Texas and Indiana, requiring railroads as land owners to clear their lands of certain noxious weeds so as to prevent them from spreading upon adjacent lands, and leaving out all other land owners, were upheld. In the former case it is said:

"  . . . We feel unable to say that the law before us may not have been justified by local conditions. It would have been more obviously fair to extend the regulation at least to highways. But it may have been found, for all that we know, that the seed of Johnson grass is dropped from the cars in such quantities as to cause special trouble. It may be that the neglected strips occupied by railroads afford a ground where noxious weeds especially flourish, and that whereas self-interest leads the owners of farms to keep down pests, the railroad companies have done nothing in a matter which concerns their neighbors only. Other reasons may be imagined."

We think also the fact that the railroads are *quasi*-public corporations, exercising certain governmental privileges, is some basis for discriminating between them as land owners and land owners in general who owe no special duties to the general public. But, whatever the reason, a lawful effort to protect a part of the owners of land from the negligence of other

owners in permitting noxious weeds to mature and shed their seed, and thus infect the fields of the careful and diligent, cannot be invoked to support legislation that burdens the right of appeal of only one class of judgment creditors, as in this case.

We think the facts of the present case bring it more nearly within the rule announced in *Gulf, Colorado & Santa Fe* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 225 (see, also, Rose's U. S. Notes). The court's language in holding the legislation in that case unconstitutional sufficiently describes the act and its earmarks as being very much like the statute we have under consideration. The court said:

"The statute arbitrarily singles out one class of debtors and punishes it for a failure to perform certain duties—duties which are equally obligatory upon all debtors; a punishment not visited by reason of the failure to comply with any proper police regulations, or for the protection of the laboring classes or to prevent litigation about trifling matters, or in consequence of any special corporate privileges bestowed by the state."

In *Consolidated Arizona S. Co.* v. *Ujack,* 15 Ariz. 382, 139 Pac. 465, the court, speaking of the different remedies open to an employee under the laws of Arizona, said that they are three: (1) Common-law liability; (2) employers' liability; and (3) compulsory compensation. It is conceivable that considerable difficulty is encountered at times in determining accurately which one of these remedies the injured employee should pursue. He may have compensation when injured in especially dangerous employment even though he may be at fault. He cannot recover under the Employers' Liability Law if the accident causing his injury was due to his negligence, but he may recover from the employer in such action even though the latter be without fault. His other remedy under the Lord Campbell's Act is one upon common-

law negligence stripped of some of its harsher features. If he choose as his remedy the Employers' Liability Law, and he is successful, the legislature provides that he may have interest, if defendant appeals and loses in the appellate court, at the rate of 12 per cent per annum from the date of filing his complaint. In the other two instances interest is allowed at 6 per cent only, and from the date of the rendition of the verdict. This is not only a discrimination between employers in the same kind of hazardous employment, but a discrimination based upon the incident of remedy, and the volition of the plaintiff in the selection of that remedy.

We suppose the reason the legislature provided for this high rate of interest when this particular remedy is adopted was to induce the defendant to readily and more willingly settle the claim of the unfortunate employee without litigation. However, it does not take into consideration that sometimes the parties are unable to agree upon what the compensation should be. It may be that the injured party has a very exaggerated estimate of the amount of his damages. The defendant under the Constitution and under the laws has a right to have a jury fix the amount of compensation that should be paid. It is a notorious fact that every plaintiff (in this class of cases) demands a great deal more than the jury usually awards him; yet this statute allows interest from the date of the filing of the complaint. We have been unable to find any definition of interest that would reach back that far. Interest is computed upon sums definitely known, or that may be ascertained by arithmetical computation, or upon a sum adjudicated to be due from one person to another.

We conclude the law is unequal in two respects: (1) In making the defendant pay double the interest that other judgment debtors are required to pay; and

(2) in permitting the interest to run from date of filing suit, whereas in all other cases it runs from date of verdict. It is also unequal in that it undertakes to punish a judgment debtor by charging him interest from date of filing complaint for not paying what he could not pay, the amount not being known or knowable until found by judicial process. The burden is not increased for not settling without a lawsuit, but for not settling at once and without appealing from a judgment which the defendant may think unjust and erroneously obtained. This is so even though the defendant may have offered before suit to settle plaintiff's claim for more than the judgment obtained, and the offer have been rejected. It is true even though it was not possible to settle before suit because of the exorbitant demands of plaintiff.

The statute in question, both in letter and spirit, runs counter to the rule laid down by that great jurist and writer, Judge Cooley, wherein he says:

"A statute would not be constitutional . . . which should select particular individuals from a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt." Cooley's Constitutional Limitations (7th ed.), pp. 556, 557.

The Illinois Supreme Court, in *Hecker* v. *Illinois Central Ry. Co.*, 231 Ill. 574, 83 N. E. 456, had before it a statute which gave an appeal on the facts to appellee, if judgment went against him because of the facts, and denied such appeal to the appellant under the same circumstances. What was there said by that learned court seems quite in point upon the question we are considering. It was there said:

"In *Durkee* v. *Janesville*, 28 Wis. 464, in holding that an act providing that costs should not be recovered against the city in an action brought to set aside any assessment or tax deed or to prevent the

collection of taxes in the city was in conflict with the rule of equality, in that suitors in all other cases were entitled to recover their costs, the court said: 'It is obvious there can be no certain remedy in the laws where the Legislature may prescribe one rule for one suitor or class of suitors in the courts and another for all others under like circumstances, or may discriminate between parties to the same suit, giving one most unjust pecuniary advantage over the other.'

"The Legislature has the right to regulate appeals and writs of error, but it has no right to discriminate between the parties. It cannot allow an appeal to one party from an adverse decision and deny it to the other. It is obvious that a law providing that the defendant should have the right to appeal from the judgment of the trial court but the plaintiff should not, would be an unjust discrimination. It is equally unjust that the appellee or defendant in error should be entitled to appeal from the judgment of the appellate court while the appellant or plaintiff in error cannot."

The difference in the present case and Hecker case is one of degree only. In the Hecker case, under the law, one of the parties was denied the right of appeal, whereas under paragraph 3161, *supra,* he may appeal if he is willing to pay the penalty, a penalty not charged any other litigant.

We think it is hardly necessary to observe that there can be no analogy between the power of the legislature, under the constitutional mandate, to create the right of action under the Employers' Liability Law, and the power of the legislature to enact a law penalizing the right of appeal by the defendant under the Employers' Liability Law.

It is also apparent that the general law provides for interest applicable to the judgment in this kind of case as in other cases, and that therefore the legislature, in selecting this particular class of judgment debtors, and imposing the penalty of 12 per cent from the date of filing complaint, was indulging in special

legislation. Since, however, the general rule is that the judgment of the legislature, upon the question as to whether or not a general law can be made applicable to a given condition, is final, we will not undertake to discuss this point further than to indicate that the power exercised is very questionable. We are satisfied that to impose 12 per cent interest upon only those employers who are sued under the Employers' Liability Law, leaving out others in the same situation, is arbitrary and capricious, and places upon such defendants unequal burdens.

A statute providing a special rate of interest upon a particular kind of loans, leaving all other loans subject to the general law, in *Althaus* v. *State*, 94 Neb. 780, 144 N. W. 799, was declared void because it violated the constitutional provision prohibiting the legislature from passing local or special laws regulating interest on money. The court, after suggesting several reasons why the classification upon which the law was based was arbitrary, said:

"In a law regulating the interest on money are the classifications made in the act permitted by the Constitution? The answer to these questions is that there is no 'substantial difference of situation or circumstance that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified.' Reasoning or refinement which would harmonize such classifications with the Constitution would make of the supreme law, of the act of the legislature and of the judgment of the court a farce or a delusion. . . . The classifications are on their face unreasonable and arbitrary. The act is the kind of legislation the Constitution was intended to prohibit. The court does not strike down the act of the Legislature. It is void, because it was passed in direct violation of a plain constitutional provision which all departments of government must respect."

See, also, 33 C. J. 186, section 26; *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821.

The appellee here, as in all other cases, is entitled to the legal rate of interest, to wit, 6 per cent from the date of verdict upon the amount of his judgment of $4,000.

The appellant has filed a motion to retax the costs, claiming that it was successful in reducing the judgment on appeal, and therefore under the law entitled to its costs. This is true as a general proposition of law. However, it was the purpose of the court to allow the appellee a clear judgment of $4,000, and, while perhaps it would have been more technically correct to have made this sum large enough to cover the costs, we think it is the same thing, since the appellant in the deduction of $6,500 got the advantage of the costs, so that it has no right to complain. Its motion to retax is therefore disallowed.

LYMAN, J., concurs.

McALISTER, C. J.—I am in accord with the majority of the court in denying the motion to add to the judgment the 12 per cent interest provided for in paragraph 3161 of the Civil Code, but my reason for this view is that appellee has not brought himself within the terms of this section, in that the judgment obtained by him in the superior court in the sum of $10,500 was not sustained by this court. Its affirmance to the extent of $4,000 only, and this upon condition that the other $6,500 be remitted as excessive, does not, as I view it, bring the plaintiff within the purview of the language providing that 12 per cent shall be added to the judgment "if the plaintiff in the lower court be again successful; and the judgment of the lower court is sustained by the higher court or courts." The plaintiff in such a case is not "again successful," nor is the judgment of the lower court therein "sustained by the higher court."

The contention that plaintiff was partially successful, and that appellant should pay 12 per cent upon

as much of the judgment as was sustained, is of no weight in face of the fact that an appeal was absolutely necessary to relieve it from paying the part that was excessive, the $6,500, because there was no other way, after its motion for a new trial was denied, by which it could have this error corrected, and it was clearly not intended that it should be saddled with the burden of an unsuccessful appellant merely because it availed itself of this remedy, and in pursuing it succeeded in convincing this court that its claim was correct. The remission of the excess was the result of the appeal, and the judgment to this extent, instead of being sustained, was reversed; hence appellant was justified in bringing his case here, and should not be placed in the shoes of one who fails in his appeal.

Under this view no statement regarding the validity of paragraph 3161 is necessary; but, inasmuch as a majority of the court do not feel this way, and are disposing of the motion upon a different theory, I will say, notwithstanding the deference I have for the forceful statement of the views entertained by my colleagues, that I am of the opinion that the provision that judgments for the plaintiff in actions arising under the Employers' Liability Law shall bear interest at the rate of 12 per cent per annum from the date of the filing of suit when the defendant appeals and is unsuccessful does not, any more than the Employers' Liability Law itself, contravene the Fourteenth Amendment of the Constitution of the United States, guaranteeing the equal protection of the laws. This law confers upon employees engaged in hazardous occupations a right not possessed by other workers or the public generally, namely, the right to damages for injuries or death resulting from accidents due to a condition of the employment in all cases in which the injury or death is not caused by the negligence of the employee, though the employer himself be without fault; and it has been held by both this court and the

Supreme Court of the United States that such discrimination is "based upon reasonable grounds affecting the public interest, being established in advance and applicable to all alike under similar circumstances," and that it is therefore not so arbitrary, unreasonable, and unjust as to constitute an infringement upon the "fundamental rights protected by the Fourteenth Amendment." Arizona Employers' Liability cases, 250 U. S. 400, 6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553. This conclusion was the result of the consideration that in the pursuit of a livelihood persons working in such dangerous occupations "must expose themselves to death or to physical injuries more or less disabling, with consequent impoverishment, partial or total, of the workman or those dependent upon him."

The legislature's power to create such a right being established, I can conceive of no reason why it could not also in the exercise of the same power enact a provision, if not within itself arbitrary and unreasonable, looking toward the enforcement of that right, regardless of the fact that such provision did not apply to the general public or other classes of employees, the reasons prompting its enactment having no reference to the latter. And the provision that a judgment in favor of a plaintiff in an action under the Employers' Liability Law shall bear interest at the rate of 12 per cent per annum from the date the suit is filed, if the defendant appeal and is unsuccessful, is but an incident of the remedy by which such specially conferred right is realized. Its enactment as a part of chapter 6, title 14, Civil Code of Arizona 1913, which is denominated "Liability of employers for injuries to workmen in dangerous occupations," was unquestionably prompted by a desire to aid in effectuating the objects of that chapter. It has the same aims and purposes and rests upon the same principle—the protection and aid of employees en-

gaged in hazardous occupations to a fuller extent than workers in other occupations and the public generally. As pointed out by the United States Circuit Court of Appeals for the Ninth Circuit in a recent case upholding its validity, *Twohy Bros. Co. v. Kennedy,* 285 Fed. 462:

"Here there is involved a special provision for the benefit of employés engaged in hazardous occupations. The Legislature of Arizona has seen fit to give such employés greater protection than is afforded to employés engaged in other occupations, and greater than is afforded to the public generally. In so doing the Legislature has as a matter of public policy recognized the intimate relation between the services of employés in hazardous occupations and the public welfare. We are not convinced that the classification conflicts with the fundamental conception of equal legislation. Courts are extremely reluctant to interfere with the authority of the state to enact such legislation, unless clearly convinced that constitutional rights are thereby invaded."

To hold that the legislature exceeded its power in the passage of this provision, when it did not do so in creating the right, the enforcement of which it was intended to aid, is, to my mind, not sustainable. If giving employees in hazardous occupations a right of action for damages against an employer entirely without fault is not denying the equal protection of the law, it is difficult to understand how the mere requirement that judgment in favor of such employees when appealed from unsuccessfully shall bear 12 per cent interest instead of 6 can have that effect. Compared with the right itself such a provision is of small importance, and there is no rule of construction of which I am cognizant requiring constitutional limitations to be more rigidly applied to mere matters of procedure than to acts of the substantive law. In reaching the conclusion that this provision might aid in the enforcement of claims prosecuted under the Employers' Liability Law, the legislature was perhaps

prompted by the fact that there were employed in this state in hazardous occupations a large number of men, a greater percentage of whom than of those engaged in other occupations would be seriously injured or killed, and that they, with but few exceptions, would be persons without means, and therefore unable to support themselves or those dependent upon them during the pendency of actions to collect damages for injuries, and that during this time, which might frequently be more prolonged than in other cases owing to the fact that the liability such an action sought to enforce was considered by some unfair and certain to lead to serious litigation, caring for them would fall upon their relatives, friends or the public, and that in consequence of these facts the insertion in the Employers' Liability Law of a provision that would tend to ·cause defendants in such actions not only to settle judgments against them without appealing, but, in case they did appeal and were unsuccessful, to compensate plaintiffs more adequately for being deprived of their damages for a long period of time, would promote the public welfare.

It cannot be successfully contended that such a requirement is invalid upon the ground that it is within itself unreasonable and arbitrary. Its constitutionality would not be questioned if it had provided that judgments in all cases of unsuccessful appeal should bear 12 per cent interest, for provision in some states has been made for an addition to the judgment of a percentage of its amount in all cases in which the appeal is not successful, and no one of these has been held unconstitutional. *Twohy Bros. Co.* v. *Kennedy, supra.*

It is held in the majority opinion that this provision discriminates against certain employers in hazardous occupations, the basis upon which the classification rests, in that those sued under the Employers' Liability Law must pay 12 per cent interest on judg-

ments against them while those from whom recovery is sought under the Workmen's Compensation Law or the Lord Campbell's Act are required to pay only six, but this view is not, in my opinion, well founded. It is true, technically speaking, that an employee injured in a hazardous occupation is not required to proceed under the Employers' Liability Law, but may bring his action under it, the Workmen's Compensation Law or the Lord Campbell's Act, whichever in his opinion will best enable him to prove his case. But, as a matter of fact, the Employers' Liability Law is the only one of these remedies used when the cause of action arises in a hazardous employment, for the reason, first, that under the Lord Campbell's Act it is necessary to show negligence on the part of the employer, and this is irrelevant and immaterial in actions based upon injuries resulting from accidents due to a condition of the employment. Of course, the plaintiff may, if he prefer, notwithstanding his injuries arise in a hazardous occupation, rest his case upon negligence, but in relying upon the fault of his employer rather than the condition of the employment he places himself outside the class the legislature intended to protect by the enactment of the Employers' Liability Law, namely, employees injured in accidents arising out of and due to a condition of the employment, the employer himself being without fault.

The second reason is that, while any workmen's compensation law which now exists or may hereafter be enacted in Arizona applies only when the injury occurs in a hazardous occupation, yet an action is never prosecuted under the present law, for the reason that it is optional with the injured employee whether he accept compensation or sue under other provisions of the statute, and the exercise of this option is not required until after injury. According to the provisions of this law an election to take compensation

precedes injury, but this court held in *Consolidated
Arizona Smelting Co.* v. *Ujack,* 15 Ariz. 382, 139 Pac.
465, and *Industrial Commission* v. *Crisman,* 22 Ariz.
579, 199 Pac. 390, that such a requirement violates the
constitutional mandate directing the legislature to en-
act a workmen's compensation law providing that it
shall be optional with the employee injured whether
he accept compensation or retain the right to sue,
and is therefore invalid. Hence there is no way by
which this law can be made the basis of settlement
except by voluntary agreement, and, while it fre-
quently happens that the employer offers and the
employee agrees to settle under its terms, yet such an
agreement has no more binding effect than one to
settle upon any other basis. And in accidents re-
sulting in death it has no application whatever, be-
cause, when an employee is killed or dies from his
injury, the right to elect, being personal, dies with
him, and the personal representative or one for whose
benefit an action exists is compelled to proceed under
the Employers' Liability Law, where the accident
causing the death is due to a condition of the em-
ployment. *Behringer* v. *Inspiration Cons. Copper Co.,*
17 Ariz. 232, 149 Pac. 1065.

The requirement that the interest shall run from
the date the suit was filed rather than from the date
of the verdict is, as I view it, merely a matter of de-
tail, and does not constitute an unreasonable dis-
crimination against defendants under the Employers'
Liability Law any more than the provision creating
a right of action for injuries resulting from acci-
dents due to a condition of the employment, the em-
ployer himself being without fault, the enforcement
of which it also was intended to aid. The exact
amount due, it is true, is not known previous to that
time, but it is equally true that whatever this may
be it is due, not merely from the date of the verdict,
nor even from the date the complaint was filed, but

from the time the injury itself was received. The cause of action arose, and plaintiff's incapacity to work, if injured to that extent, began at that time. The date the interest began to run, as well as the amount thereof, is merely an incident to the remedy by which the plaintiff's right is enforced. Justices HOLMES, BRANDEIS and CLARKE were evidently of the opinion that this provision was not invalid, for in their concurring opinion upholding the validity of the Employers' Liability Law (*Inspiration Cons. Copper Co.* v. *Mendez,* 250 U. S. 400, 6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 561), they say that ''it is not urged that the provision allowing 12 per cent interest on the amount of the judgment from the date of filing the suit, in case of an unsuccessful appeal, is void,'' and then cite two cases for the evident purpose of showing that such a contention was not made because it was realized that it was not tenable. In one of these, *Fidelity Mutual Life Association* v. *Mettler,* 185 U. S. 308, 46 L. Ed. 922, 22 Sup. Ct. Rep. 662 (see, also, Rose's U. S. Notes), the United States Supreme Court held that a statute of the state of Texas, providing that life and health insurance companies which failed to pay a loss within the time specified in a policy, after demand made therefor, should pay 12 per cent damages on the amount of such loss together with reasonable attorney's fees for the prosecution and collection of such loss, did not deny such companies the equal protection of the law, notwithstanding such obligations were not imposed upon other classes of insurance associations. And the authorities cited by the Circuit Court of Appeals in *Twohy Bros. Co.* v. *Kennedy, supra,* upon the question of the reasonableness of the classification involved in this case appear to me, when viewed in connection with what has been said herein, to be in point.

However much one may disagree with the policy of the legislature in the passage of paragraph 3161,

its recognition therein, as a matter of public policy, of the "intimate relation between the services of employees in hazardous occupations and the public welfare," does not, as I see it, constitute discrimination so arbitrary and unreasonable as to be invalid. And, such being true, it follows that this court cannot do otherwise than give effect to its terms, and that any effort to nullify it should be directed toward the branch of the government that has such power, the legislative, rather than toward the judicial, within whose province rests only the right to construe it.