707 P.2d 963

**Shields A. LAYNE, an unmarried man, Plaintiff/Appellant/Cross-Appellee,**

v.

**TRANSAMERICA FINANCIAL SERVICES, INC., an Arizona corporation and Pacific Finance Loans, Inc., a California corporation, Defendants/Appellees/Cross-Appellants.**

No. 2 CA–CIV 5312.

Court of Appeals of Arizona, Division 2, Department A.

June 12, 1985.

Review Denied Oct. 8, 1985.

---

Southern Arizona Legal Aid, Inc. by Charles R. Pyle, Tucson, for plaintiff/appellant/cross-appellee.

Streich, Lang, Weeks & Cardon by William S. Hawgood II and Randall S. Theisen, Phoenix, for defendants/appellees/cross-appellants.

## OPINION

FERNANDEZ, Judge.

Appellant Layne appeals from an order dismissing his complaint for failure to state a claim. The complaint alleged that a loan transaction entered into June 5, 1981, between Layne and Transamerica Financial Services, Inc. was usurious because a prepaid finance charge of ten "points" was assessed in addition to the stated interest rate applicable to the unpaid balance. We find the transaction was not usurious and affirm the dismissal. We also affirm the denial of attorney's fees to Transamerica, a ruling that is the subject of a cross-appeal.

Layne borrowed $39,510.26 from Transamerica for a period of 15 years. The loan was secured by a deed of trust on Layne's home. The box on the promissory note and security agreement, entitled "Agreed Rate of Charges," states as follows: "The Agreed Rate of Charge is 19.9% per annum interest on the Total Amount of Loan, plus a Prepaid Finance Charge of 10% of the Total Amount of Loan." In another place on the form the annual percentage rate is shown as 22.49% (apparently for purposes

of complying with the Truth in Lending Act, 15 U.S.C. §§ 1604, 1605). The complaint alleges that the nature and amount of the prepaid finance charge was not explained to Layne.

### Usury Contentions

Layne contends that the charging of ten points for a direct consumer loan was a violation of A.R.S. § 44–1201 et seq. Section 44–1201 was amended in 1980 to read as follows:

"A. Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.

"B. A judgment given on an agreement bearing a higher rate not in excess of the maximum permitted by law shall bear the rate of interest provided in the agreement, and it shall be specified in the judgment."

The removal of a stated interest ceiling was a response by the legislature to upwardly spiraling interest rates that prevailed in the late 1970s and was a return to the usury law that existed during territorial times until 1909. Special Project, Usury and the Monetary Control Act of 1980, 1981 Ariz.St.L.J. 35. Because the loan in question was in excess of $10,000 it is governed by the general usury statute quoted above.

Layne contends that "rate of interest" as used in the statute means "a numerical percentage rate applied to the principal balance over a period of time to determine the dollar amount of interest accruing." Since the 19.9% interest stated in the note meets that definition, Layne asserts anything charged in addition to that figure is in excess of the agreed-upon rate and is therefore unlawful.

There is no dispute that the prepaid finance charge of 10% or $3,951.02 is attributable to interest and is not a charge earned for any services rendered in connection with the loan. *Grady v. Price*, 94 Ariz. 252, 383 P.2d 173 (1963). As noted by Transamerica, "points" are "a flat initial loan charge that is deducted from the principal amount of the loan before the net proceeds are disbursed to the borrower."

Prior to the 1980 amendment of A.R.S. § 44–1201, it was permissible to charge points so long as the effective rate of interest of the transaction did not exceed the usury ceiling. The discussion in *Altherr v. Wilshire Mortgage Corporation*, 104 Ariz. 59, 448 P.2d 859 (1968), with regard to points is instructive.

"The second fee required of the borrower, by Wilshire, was a five per cent discount 'on the takeout.' In the trade this means that if the permanent loan was for $1,000 Wilshire would take $50 of that amount, so Altherr would get only $950. This is a common practice, similar to that of many lending institutions which refer to them as 'points.' If a lender made an eight per cent loan, and, in addition to the interest, required the borrower to pay points, or a discount, usury would be clear immediately. But *where the points or discount are required on a long-term loan, the amount involved must be spread over the entire term of the loan to determine whether the eight per cent maximum allowable interest is exceeded.*" 104 Ariz. at 63 [448 P.2d 859] (emphasis in original).

Crucial to a determination of Layne's assertions is the meaning of the term "rate of interest" that appears in A.R.S. § 44–1201. He contends it must be construed "according to the common and approved use of the language" pursuant to A.R.S. § 1–213 and that its meaning must be the same under both subsections A and B of § 44–1201. According to Layne, if it can mean "effective rate of interest" under A, then one cannot determine what rate of interest "provided in the agreement" would apply to any judgment rendered under it.

As Transamerica points out, however, A.R.S. § 1–213 has an additional sentence which states that

"[t]echnical words and phrases and those which have acquired a peculiar and ap-

propriate meaning in the law shall be construed according to such peculiar and appropriate meaning."

The phrase "rate of interest" has appeared as such in subsection B for a number of years and has appeared in subsection A in a slightly different form for the same length of time. In 1956 subsection B read as follows:

"A rate of interest, not to exceed eight per cent per annum, if agreed to in writing, signed by the debtor, shall be paid...."

By providing that parties to a transaction may agree to any rate of interest, the 1980 amendment does not change the law to the extent that the phrase "rate of interest" has acquired a new meaning. The phrase in subsection B was construed to mean "effective percentage rate" in Altherr v. Wilshire Mortgage Corporation, supra, in 1968, and no question was raised that it meant something slightly different there than it did in subsection A. That construction has been followed since, *Kissell Co. v. Gressley*, 591 F.2d 47 (9th Cir.1979); Atty. Gen.Op. 69–23 (1969), and there is no indication the legislature intended to change it in the 1980 amendments. Thus, for purposes of present subsection B, the rate of interest applicable to a judgment in this loan transaction would be the 19.9% that applies to the unpaid balance of the loan.

■ Layne also contends that the charging of points in a loan transaction violates public policy since there is no longer any justification for points with the deregulation of credit controls. He notes that points are a "method for attracting lenders when market rates are higher than a governmental limit on interest rate charges" and submits that with deregulation consumers are entitled to as simple an interpretation of interest rate as possible so they may compare prices of loan transactions. Transamerica's response is that points are a method by which lenders receive a greater portion of their compensation at the beginning of the loan period when their costs are highest. That situa-

tion has not changed with the deregulation of credit.

We note too that the promissory note and security agreement applicable to this loan clearly states the rate of interest applicable to the unpaid balance of the loan, the amount of the prepaid finance charge expressed as both a percentage of the loan and in dollars and cents, and the annual percentage rate which is computed from a combination of the two. In addition, the total amount of the finance charge that is to be repaid over the life of the loan is stated in dollars and cents. With those figures, any price-conscious consumer could easily compare two or more loans. The loan papers clearly indicate all pertinent figures were disclosed to Layne and that he agreed to the written finance charge and the stated rate of interest.

We note also that in 1984 the legislature expressly prohibited the charging of points in connection with consumer loans of $10,-000 or less. A.R.S. § 6–622; 1984 Laws, Ch. 238, § 11. If the legislature had intended to prohibit the charging of points in connection with transactions under the general usury statute, it could easily have done so.

■ We find no indication the charging of points is usurious per se as a result of the removal of a usury ceiling in the 1980 amendments to A.R.S. § 44–1201. The judgment dismissing appellant's complaint is affirmed.

### Cross-Appeal on Denial of Attorney's Fees

Transamerica sought attorney's fees pursuant to A.R.S. § 12–341.01(A) as the successful party in an action arising out of contract. The court denied the request, finding that the suit arose instead from an alleged violation of a statutory prohibition and that the case was brought in good faith and involved a question of first impression.

■ Although we do not agree with the reasoning of the trial court that this action did not arise out of a contract, we nevertheless affirm the denial of fees. *A.I.D. In-*

*surance Services v. Riley*, 25 Ariz.App. 132, 541 P.2d 595 (1975). Since there can be no usury claim absent a charge in excess of an amount "contracted for in writing," the cause of action is intrinsically related to the contract. *Sparks v. Republic National Life Insurance Company*, 132 Ariz. 529, 647 P.2d 1127, cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982).

Having determined that the claim arose out of a contract, however, does not result in an award of attorney's fees. Such an award is discretionary and there is no presumption that the successful party is entitled to attorney's fees. *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985). Among the factors listed in that case as being useful in assisting the trial judge to determine if an award should be made are "the novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction." 143 Ariz. at 570, 694 P.2d at 1184. Although we have affirmed the finding that the loan transaction was not usurious, the question presented by appellant is one that has not previously been adjudicated and is a valid question in light of the 1980 deregulation of credit controls.

Since there was a reasonable basis for the court's denial of attorney's fees, we find there was no abuse of discretion.

Judgment affirmed.

BIRDSALL, P.J., and HOWARD, J., concur.