804 P.2d 768

**David G. MORRISON and Hazel C. Morrison, husband and wife, Plaintiffs–Appellees,**

v.

**SHANWICK INTERNATIONAL CORPORATION, an Arizona Corporation; Johnny Shannon and Jane Doe Shannon, husband and wife, Defendants–Appellants.**

**No. 1 CA–CV 89–326.**

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 11, 1990.

Review Denied Feb. 20, 1991.

Lance F. Jacobs, Scottsdale, for defendants-appellants.

Apker, Apker, Haggard & Kurtz by David B. Apker, Phoenix, for plaintiffs-appellees.

## OPINION

VOSS, Judge.

This is an appeal from a grant of summary judgment against defendants Shanwick International Corporation (Shanwick) and Darlene Shannon, and in favor of plaintiffs David G. Morrison and Hazel Morrison (the Morrisons). Appellants raise four issues[1] for our consideration: 1) did the trial court err in granting summary judgment against Darlene Shannon; 2) did the trial court err in granting summary judgment for a claim based on A.R.S. § 12–671, the "bad check" statute; 3) did the trial court err in awarding interest in an amount higher than that provided by statute; and 4) did the trial court err in awarding attorney's fees and costs; and if not, were the amounts awarded proper. For the reasons which follow, we affirm summary judgment against Shanwick and reverse summary judgment against Darlene Shannon. Additionally, we affirm the trial court's basis for attorney's fees, but remand for re-examination of the amount of fees and costs in light of our decision.

### Background

■ On appeal from a motion from summary judgment we view the facts, and all reasonable inferences, in the light most favorable to the appellant. *State ex rel. Corbin v. Challenge, Inc.,* 151 Ariz. 20, 24, 725 P.2d 727, 731 (App.1986). As noted by the appellants, there is no real dispute concerning the underlying facts.

On May 6, 1988, the Morrisons agreed to loan $25,000 to Shanwick. This agreement was reduced to writing and provided that Shanwick would repay the $25,000 loan plus $2,500 in 60 days. The agreement was signed by Johnny Shannon, appellant Darlene Shannon's husband, both as Chief

---

1. For ease of description and discussion we present the issues somewhat differently than appellants did in their brief.

Executive Office of Shanwick and personally.

Shanwick received the $25,000. On July 6, 1988, the Morrisons agreed to an extension on the loan for 60 additional days. This agreement was reduced to writing which was signed by Johnny Shannon both as C.E.O. of Shanwick and personally. Attached to the agreement was a check for $27,500 (the $25,000 principal and an additional $2,500) written on Shanwick's account and postdated to September 6, 1988.

At this same time the Morrisons were to receive an additional $2,500 as evidenced by a check written on Shanwick's account and postdated to July 12, 1988. This payment was in consideration of the original loan term of May 6, 1988, through July 6, 1988.

Both of the checks were returned for insufficient funds and payment was not made. After several demands, the Morrisons filed suit claiming breach of contract and statutory relief under A.R.S. § 12-671, the "bad check" statute. The trial court granted summary judgment against Shanwick and Darlene Shannon on the first count and against Shanwick on the second count.

### Discussion

We initially note that summary judgment is improper unless there are no disputes concerning material issues of fact and one of the parties is entitled to judgment as a matter of law. Rule 56(c), Arizona Rules of Civil Procedure; *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982).

### Summary Judgment Against Darlene Shannon

Appellants argue that summary judgment against Darlene Shannon was improper as the judgment was entered against her without notice and an opportunity to be heard. By way of supplemental authority attached to their opening brief, appellants assert that the Morrisons failed to follow

the procedure described in Rule 56(a) for filing motions for summary judgment.

To better understand our conclusion we set forth the procedural history in detail. The Morrisons filed their complaint on November 23, 1988. The complaint named Shanwick, an Arizona corporation, and Johnny and "Jane Doe" Shannon, husband and wife, as defendants. Service was completed on Shanwick on November 29, 1988. On December 2, 1988, service was attempted on Johnny Shannon by leaving a copy of the complaint and summons at his office.[2] Shanwick separately answered on December 28, 1988.

The Morrisons filed a motion for summary judgment on January 31, 1989. The allegations and prayer were directed solely against Shanwick. Copies of the motion were mailed to Lance F. Jacobs, as attorney for defendant Shanwick, and to Johnny Shannon at the Shanwick corporate office address. Nine days later on February 9, 1989, a copy of the complaint and summons was served on Darlene Shannon at her home.

On February 21, 1989, Shanwick filed its response to the motion for summary judgment and a cross motion for summary judgment. This motion was signed by Jacobs as attorney for Shanwick. The Morrisons filed a reply and sent copies to Johnny Shannon at the Shanwick office address and to Jacobs as attorney for Shanwick.

On March 9, 1989, the trial court issued a minute entry reflecting its decision to grant the Morrisons summary judgment against both Shanwick and Darlene Shannon.

On March 23, 1989, Darlene Shannon filed her separate answer after an application for default was filed. Jacobs signed this pleading as attorney for Darlene Shannon. On April 5, 1989, Darlene Shannon filed an objection to the entry and form of judgment, specifically arguing the impropriety of the procedures utilized. After

---

**2.** This service was the basis of considerable dispute among the parties. However, the trial court stayed proceedings against Johnny Shannon as he petitioned for bankruptcy on February 19, 1988. This finding effectively removed Johnny Shannon from the suit and no issues concerning him are raised on appeal.

several other motions, judgment was formally entered on May 5, 1989.

■ By filing their motion for summary judgment nine days before serving Darlene Shannon with process, the Morrisons failed to follow the filing procedure described in Rule 56(a)[3] with respect to Ms. Shannon. Normally this procedural defect alone, without any discussion of notice or opportunity to be heard, would preclude summary judgment in the Morrisons' favor. *See Local Union No. 490, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO v. Kirkhill Rubber Co.*, 367 F.2d 956, 958 (9th Cir.1966) (holding that summary judgment was improper where plaintiff filed motion for summary judgment before the expiration of twenty days); *see also Feldman v. Local Bd. No. 22 of the Selective Service System*, 239 F.Supp. 102, 103 (S.D.N.Y.1964) (stating in dicta that motion for summary judgment filed on same day of complaint violates Rule 56(a)). However, appellants did not raise this defect to the trial court, and first argued it on appeal in a supplemental authority filed after all the briefing was completed. Because the argument was not timely raised, we cannot grant relief on this basis. *See Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987) (appellate court will not consider new issues or theories raised by parties on appeal from summary judgment); *see also Herring v. Railway Exp. Agency, Inc.*, 13 Ariz.App. 28, 30, 474 P.2d 35, 37 (1970) (objection waived where party failed to timely object to violation of ten day notice provision under the former Rule 56(c)).

■ We are left then to decide whether the described procedure resulted in a denial of due process. The Arizona and federal constitutions prohibit deprivation of property without due process. Ariz. Const. art. 2 § 4; U.S. Const. Amend. XIV. Among other important considerations, due process assures us that property will not be taken under the auspices of the government absent notice and an opportunity to be heard. *Landgraff v. Wagner*, 26 Ariz. App. 49, 54, 546 P.2d 26, 31 (1976), *appeal dismissed*, 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 (1976). Notice and an opportunity to be heard must be provided at a meaningful time and in a meaningful manner, *Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979), as provided by the regular and established rules of procedure, *Marco v. Superior Court*, 17 Ariz.App. 210, 212, 496 P.2d 636, 638 (1972).

We do not believe Darlene Shannon was afforded notice and an opportunity to be heard at a meaningful time or in a meaningful manner as provided by established rules of procedure. The record is clear that Darlene Shannon was not served with a complaint and summons until nine days *after* the motion for summary judgment was filed. Additionally, she was never provided or served with a copy of the motion.[4] The record only shows that the Morrisons mailed a copy of their motion to Jacobs as the attorney for Shanwick and that another copy of the motion was mailed to Johnny Shannon at the Shanwick office address. The mailing of these copies also occurred prior to service on Darlene Shannon.

The Morrisons argue that Darlene Shannon had adequate notice of the motion because her attorney knew of it. This position is based on either of two implicit presumptions, both of which are flawed. If the Morrisons contend that the initial mail-

---

3. Rule 56(a) provides:

 **For claimant.** A party seeking to recover upon a claim ... may, at any time after the expiration of twenty days from the service of process upon the adverse party ..., move ... for a summary judgment in his favor....

4. Under Rule 5(a) every pleading or motion must be served upon the party. Rule 5(c)(1) requires service of pleadings and motions to be made upon the party's attorney. The convoluted and confused nature regarding the service of process and filing the motion for summary judgment make it unclear whether Rule 5 directly applies to this case. Because it is unnecessary to our decision and because appellants did not raise any issue concerning failure to follow Rule 5, we need not resolve this issue. What is important to our discussion is that nothing in the record indicates that Darlene Shannon was served either in person or through her attorney with a copy of the motion for summary judgment.

ing of the motion to Jacobs as attorney for Shanwick also constituted notice to Darlene Shannon, we cannot agree. The only copy of the motion mailed to Jacobs was addressed to him by the Morrisons as attorney for Shanwick before Darlene Shannon was brought into the action. There are no facts demonstrating that Jacobs was Ms. Shannon's attorney of record in this matter when the motion was mailed. We will not assume from the bare fact that Jacobs was ultimately Ms. Shannon's attorney of record, that he was her attorney before she was even made a proper party to the action.[5] *See Rotary Club of Tucson v. Chaprales Ramos de Pena*, 160 Ariz. 362, 365, 773 P.2d 467, 470 (App.1989) (courts may not assume party's attorney is proper agent for service of process; evidence must show attorney is authorized to receive such service).

The Morrisons' other postulate is that the motion itself served to notify Ms. Shannon, through her attorney, as soon as she was brought into the action. Again, we do not agree. In reviewing the motion for summary judgment and the accompanying separate statement of facts we note that Darlene Shannon is never mentioned by name. The sole reference possibly relating to her is a "Jane Doe" reference in the caption. Additionally and more importantly, the claims, theories, and various requests for relief contained in the motion are exclusively directed at "defendant Shanwick." There is absolutely no allegation of Darlene Shannon's liability by virtue of a presumption that her husband's activities were taken on behalf of the community.[6] For that matter, there is no allegation of liability on the part of Johnny Shannon personally. In reviewing the record it appears likely that the first mention of liability on the part of Darlene Shannon occurred at the hearing on the Morrisons' motion for summary judgment.[7] This did not constitute adequate notice.

The Morrisons argue that even if notice was inadequate, the defect was harmless as Darlene Shannon's attorney was able to address the issues at the hearing on the motion for summary judgment. The requirements of timely notice and meaningful opportunity to be heard certainly envision more than contemporaneous notice and opportunity to be heard on an unsuspecting and unprepared party. *See Cravens, Dargan and Co. v. Superior Court*, 153 Ariz. 474, 737 P.2d 1373 (1987). Similarly, we find unavailing the Morrisons assertion that the notice and opportunity to be heard problems were rectified by Darlene Shannon's motion for reconsideration.

We hold that Darlene Shannon was denied due process as she never received adequate notice of the summary judgment proceedings or a fair opportunity to be heard. We reverse summary judgment against Darlene Shannon and remand this matter to the trial court for any further proceedings concerning Ms. Shannon.

*Summary Judgment Based on A.R.S. § 12–671*

Appellants assert that a postdated check can never provide the basis for a claim under A.R.S. § 12–671(A)[8] or estab-

---

5. The record shows that the first appearance by Jacobs as attorney of record for Darlene Shannon was March 23, 1989, when Jacobs filed Ms. Shannon's answer. This occurred after the hearing and the trial court's minute entry granting summary judgment.

6. The trial court found Darlene Shannon liable for breach of contract because Johnny Shannon signed the note personally and there was no indication that this act was not done on behalf of the community property. Because we determine that the judgment was ·entered without adequate notice or a fair opportunity to be heard, we need not decide whether the trial court's determination was correct.

7. Neither party requested the presence of a court reporter during the motion for summary judgment hearing. As the trial court set forth Darlene Shannon's liability in the minute entry reflecting the hearing, we reasonably speculate that this issue was discussed during the hearing.

8. A.R.S. § 12–671(A) provides:

A person who, for himself or for another, with intent to defraud, makes, draws, utters or delivers to another person or persons a check or draft on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in,

lish the statutory presumption of fraudulent intent found in subsection C.[9] Appellants reason that a postdated check is not a check within the meaning of the statute. Instead, appellants continue, a postdated check is a "mere promise" to discharge a present obligation at a future date and failure to fulfill this promise cannot satisfy the fraudulent intent element found in the statute. For this proposition appellants cite *State v. Stout*, 8 Ariz.App. 545, 448 P.2d 115 (1968), and several cases from other jurisdictions [10] reversing criminal convictions for issuing postdated checks. We disagree with appellants for two reasons.

First, appellants' contention that a postdated check is not included under A.R.S. § 12–671 is incorrect. Our legislature repealed the prior scheme of commercial statutes and adopted the Uniform Commercial Code now found in Title 47 of our statutes. A.R.S. § 47–3114(A) states that the "negotiability of an instrument is not affected by the fact that it is undated, antedated or *postdated.*" (Emphasis added.) Subsection B makes an antedated or postdated demand instrument payable on the date stated on its face.

 Reviewing these sections, it appears to us that a postdated check is something more than a "mere promise" to pay as appellants contend. Postdated checks are fully negotiable instruments upon which the demand date is fixed at some latter time. *How v. Fulkerson*, 22 Ariz. App. 467, 469, 528 P.2d 853, 855 (App.1974).

Under A.R.S. § 47–3104(B) this instrument, while fully negotiable, is not a "check" as checks are "payable on demand," but instead it is a "draft." *State v. Phelps*, 125 Ariz. 114, 117, 608 P.2d 51, 54 (App.1979).

In other contexts, distinctions between checks and drafts may be important; however, our legislature has specifically included drafts under the protection afforded by A.R.S. § 12–671. A draft otherwise covered under A.R.S. § 12–671 should not fail to support a claim simply because it is a postdated check.

We cannot agree with appellants' argument for another reason. Contrary to appellants' assertion, *Stout* did not hold that the issuance of a postdated check *per se* negates the fraudulent intent element. Instead, *Stout* held that under the particular facts of that case the payee's acceptance of postdated checks constituted an extension of credit to the maker by the payee. *Stout*, 8 Ariz.App. at 548, 448 P.2d at 118.

To the extent this holding implies an inherent distinction between postdated checks and other checks or drafts, we must take exception for the reasons previously expressed. However, to the extent *Stout* held that certain facts in addition to postdating may negate the inference of fraudulent intent, we agree.

 Properly viewed, we believe the present relevance of *Stout* [11], is that postdating alone does not negate the requisite fraudulent intent. However, postdating

---

or credit with, such bank or depositary to meet the check or draft in full upon presentation, shall be liable to the holder of such check or draft for *twice* the amount of such check or draft ... together with costs and reasonable attorney's fees as allowed by the court on the basis of time and effort expended by such attorney on behalf of plaintiff.

9. A.R.S. § 12–671(C) provides:
Proof that, at the time of presentment, the maker, issuer or drawer did not have sufficient funds with the bank or depositary, and that he failed within twelve days after receiving notice of nonpayment of dishonor to pay the check or draft is prima facie evidence of intent to defraud.

10. In addition to *Stout* appellants cite *People v. Burnett*, 39 Cal.2d 556, 247 P.2d 828 (1952), *Ex*

*parte Griffin*, 83 Cal.App. 779, 257 P. 458 (1927), *State v. Eikelberger*, 72 Idaho 245, 239 P.2d 1069 (1951), *People v. Mazeloff*, 229 A.D. 451, 242 N.Y.S. 623 (1930), and *Commonwealth v. Massaro*, 97 Pa.Super. 149 (1929). We restrict our discussion to *Stout* as it is the only Arizona authority cited by appellants, is more recent than the other cases, and essentially applied the same reasoning used in the other cases.

11. *Stout* was decided on December 11, 1968. However, the operative facts all occurred in 1966 prior to the Arizona legislature's adoption of the Uniformed Commercial Code on December 31, 1967. *See* A.R.S. Title 47, introduction to disposition table. It appears from its omission of discussion regarding the applicability of the Uniform Commercial Code, the *Stout* court concluded that the Code was inapplicable to the facts of that case.

coupled with other factors may overcome the presumption of intent contained in A.R.S. § 12–671(C). This is the position adopted by most jurisdictions, at least regarding criminal liability for issuing bad postdated checks. *See* Annotation, *Application of "Bad Check" Statutes with Respect to Postdated Checks*, 52 A.L.R.3d 464, 473–77 (1973).

Our decision is consistent with Arizona law concerning fraud in general. Certainly, an individual can have a present fraudulent intent regarding the happening of future actions. *Pinnacle Peak Developers v. TRW Inv. Co.*, 129 Ariz. 385, 388–89, 631 P.2d 540, 543–44 (App.1980). To suggest that a person who draws a check presently intending to defraud the payee can escape civil liability simply because he dates the check to the following day, while a similar individual who dates his check on the current day is liable, defies common sense and our law. Yet this is the construction appellants would have us adopt; we will not.

▮▮▮▮▮ We hold that postdated checks are included under A.R.S. § 12–671. We also hold that the mere act of postdating does not negate the presumption of fraudulent intent. As appellants have not indicated any facts other than postdating to demonstrate the lack of fraudulent intent, we find that summary judgment against Shanwick for liability under A.R.S. § 12–671 is appropriate.

*Interest*

▮▮▮ Appellants assert that the trial court erred in awarding 60% interest [12] on the judgment from count one of the Morrisons complaint alleging breach of contract involving a loan. Appellants argue that their written loan agreement did not contain an express interest term. Instead, appellants continue, their agreement provided for a flat charge of $2,500. Under the express terms of the agreement the $2,500 was to be paid in consideration of the loan, and with the payment of the principal 60 days from the date of the loan.

The recovery of interest is provided for in A.R.S. § 44–1201.[13] Nothing in that statute requires the interest rate to be expressed in terms of a precise numerical percentile. Instead, the statute only requires that a "rate of interest" be described in the written agreement.

Clearly, the $2,500 payment was in consideration of the money loaned, or "interest" as that term is commonly used. *Arizona Eastern Railroad Co. v. Head*, 26 Ariz. 259, 262, 224 P. 1057, 1058 (1924); *Flood Control Dist. of Maricopa County v. Hing*, 147 Ariz. 292, 298, 709 P.2d 1351, 1357 (App.1985). Black's describes "rate" as:

> Proportional or relative value, measure, or degree. The proportion or standard by which quantity or value is adjusted. Thus, the *rate* of interest is the proportion or ratio between the principal and interest. . . .

Black's Law Dictionary 1134 (5th ed. 1979). Combining these terms, the "rate of interest" in the parties' agreement is the proportion of $2,500 of $25,000 on a 60 day loan. Mathematically extrapolated to a per annum basis, the interest rate is 60%. We conclude that the loan agreement expressly provided a rate of interest which is equivalent to 60% interest per annum.

Direct support for our conclusion is found in *Hobart Bros. Co. v. Welding Supply Service, Inc.*, 21 Ohio App.3d 142, 486 N.E.2d 1229 (1985). In addressing the pro-

---

**12.** The trial court ordered payment for interest at $41.67 per day from September 6, 1988. No calculations are provided for this figure in the record, however, the Morrisons indicate that this figure is derived from calculating 60% interest per annum on the $25,000 principal. Appellants do not contest this calculation, and in fact apparently accept it as accurate given their contention that the trial court awarded "60%" interest per year.

**13.** A.R.S. § 44–1201 provides:

> **A.** Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.
>
> **B.** A judgment given on an agreement bearing a higher rate not in excess of the maximum permitted by law shall bear the rate of interest provided in the agreement, and it shall be specified in the judgment.

priety of attorney's fees under the analogous Ohio statute, the *Hobart* court stated that "[t]he term 'rate of interest' as used in [the Ohio statute] refers to the percentage *or amount of interest.*" *Id.* 21 Ohio App.3d at 144, 486 N.E.2d at 1232 (emphasis added). Through this disjunctive construction, the *Hobart* court acknowledged that the "rate of interest" could be derived from expressed terms capable of computation, as well as directly stated percentiles.

Our conclusion is also supported by Arizona cases discussing usurious interest rates decided before the interest rate ceiling was repealed under A.R.S. § 44–1201. In *Grady v. Price*, 94 Ariz. 252, 383 P.2d 173 (1963), our supreme court held that unreasonable fees related to charges associated with providing loans could be included with the stated percent of interest to determine whether the amount of interest constituted usury. *See also Kisvel Co. v. Gressley*, 591 F.2d 47 (9th Cir.1979); *Altherr v. Wilshire Mortg. Co.*, 104 Ariz. 59, 448 P.2d 859 (1968). In a general sense, these cases recognize that the rate of interest can be expressed in terms other than percentiles described on the face of agreements as interest rates.

Further support is found in the facts of this case. When appellants failed to meet the original 60 day deadline for payment of the $25,000 principal plus $2,500 interest, the Morrisons extended the loan for an additional 60 days in consideration of another $2,500 interest payment. This evidence indicates that the original $2,500 interest payment was for the loan of $25,000 *for the 60 day period*, and not as appellants suggest a flat payment for the loan independent of the time in which the loan was to be paid.

Finally, we believe adoption of appellants' position would result in a windfall to appellants deriving from their admitted breach of the loan agreement. The parties agreed to what amounts to a 60% per annum interest rate. If we disallowed that interest rate after the expiration of the 60 day term of the loan, we would in effect give appellants the continued use of principal at a reduced rate of 10% interest per annum. This is neither consistent with the terms of the parties' agreement nor with A.R.S. § 44–1201.

Appellants argue that our conclusion is directly contrary to *Layne v. Transamerica Financial Services, Inc.*, 146 Ariz. 559, 707 P.2d 963 (App.1985). However, *Layne* found that pre-paid "points", while considered part of the "effective interest rate" for purposes of determining usury, were not additional elements of the "rate of interest" where the agreement separately provided for interest on the remaining balance. *Id. Layne* did not decide whether a "rate of interest" could be derived from expressed terms absent a specifically stated percentile.

We hold that the trial court properly awarded the Morrisons 60% interest on the $25,000 principal.

*Attorney's Fees and Costs*

Appellants first contest the award of attorney's fees to the Morrisons on both counts of the complaint. As we have already determined that A.R.S. § 12–671 applies to postdated checks, we find unavailing appellants' position that the facts in this case cannot support an award of fees under that statute. We turn to the award of fees on the Morrisons' claim for breach of contract.

Appellants argue that they did not "contest" the contract claim and therefore the award of fees was improper under A.R.S. § 12–341.01. We agree that A.R.S. § 12–341.01(A) allows fees "[i]n any contested action arising out of a contract...." However, we cannot adopt the overly restricted definition of "contested" urged by appellants.

We believe a contested action is one in which the defendant has appeared and generally defends against the claims and demands made by the plaintiff. Conversely, an action is not contested, or "uncontested," simply because the defendant admits in his answer the true facts of the case.

In this case, appellants admitted the essential facts underlying the contract claim.

However, appellants appeared and filed an answer denying that Shanwick stock was part of the consideration for the loan, reserving for themselves the right to assert any affirmative defenses, and specifically contesting the relief sought by the Morrisons, including relief other than attorney's fees.

Under the facts of this case, we hold that appellants "contested" the action and the trial court had the authority under A.R.S. § 12–341.01 to award attorney's fees.

Appellants next contend that the amount of attorney's fees and costs was excessive and unjustified. The trial court awarded $6,000 in attorney's fees and $331.80 in costs against both Darlene Shannon and Shanwick on count one of the Morrisons' complaint. The court additionally awarded $1,200 in attorney's fees against Shanwick on count two of the complaint.

With regard to count one, we have already determined that summary judgment against Darlene Shannon was improper. Of course, any attorney's fees and costs attributable to Darlene Shannon must be separated from attorney's fees and costs attributable to Shanwick and vacated. We are unable to determine from the record before us what fees and costs pertain to which defendant. On remand the trial court should ascertain what fees and costs are attributable to Shanwick and award those fees and costs.

With regard to count two, the award of attorney's fees only concerns Shanwick. This award is proper and supported by the record.

Finally, the Morrisons have requested attorney's fees on appeal pursuant to A.R.S. § 12–341.01. In our discretion we decline to award attorney's fees on this appeal.

EUBANK, P.J., and SHELLEY, J., concur.