

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2002

# Cappalli v. Nordstrom FSB

Precedential or Non-Precedential:

Docket 1-2436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Cappalli v. Nordstrom FSB" (2002). *2002 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2436
_____

PAULA E. CAPPALLI, IN HER OWN
NAME AND AS REPRESENTATIVE OF A CLASS,
                                        Appellant

v.

*NORDSTROM FSB

*(Amended in accordance with Clerk's Order dated 6/27/01)
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 00-cv-04454
District Judge:  The Honorable Thomas N. O'Neill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
February 12, 2002
_____

Before: MANSMANN, McKEE, and BARRY, Circuit Judges

(Opinion Filed:  February 15, 2002)
_____

MEMORANDUM OPINION
_____


BARRY, Circuit Judge
     Paula Cappalli brought a putative class action suit against a
national credit bank
currently known as Nordstrom fsb (the "Bank").  Cappalli alleged that the
fee she was
charged after making a late payment on her Nordstrom credit card account
violated the
Home Owner's Loan Act ("HOLA"), 12 U.S.C.  1463(g).  The Bank filed a
motion to
dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
The District
Court  granted the Bank's motion, finding that Cappalli failed to state a
claim upon which

relief could be granted. We agree and will affirm.  We have jurisdiction pursuant to 28 U.S.C.   1291.

To receive her Nordstrom credit card, Cappalli signed a cardholder agreement, thereby entering into a written agreement with the Bank.  In relevant part, the cardholder agreement stated:

3.   Promise to Pay.  I agree to pay . . . for all purchases and cash advances, including applicable Finance Charges and other charges or fees incurred by me . . .

4.   Monthly Payments.  Each month, I agree to pay at least the Total Minimum Payment shown on my monthly billing statement no later than the Payment Due date shown on the monthly billing statement.

*     *     *

6. (d)    The Monthly Periodic Rate of Finance Charge on my account is 1.75% (corresponding ANNUAL PERCENTAGE RATE 21%).

*     *     *

11.  Late Payment Fee.  If the "Current Due" shown on my monthly billing statement . . . is not paid within 10 days after the scheduled Payment Due shown on my monthly billing statement, [the Bank] may charge me and I agree to pay a Late Payment of $20.

*     *     *

15.  Governing Law.  I understand that this Agreement is governed by and construed in accordance with the laws of the United States.  To the extent state law applies to this Agreement, this Agreement will be governed by the laws of the state of Arizona.

App. at 20-22.

In April 2000, Cappalli received a billing statement from the Bank that showed an unpaid balance of $101.72 and indicated that a payment was due on May 13, 2000. Cappalli's husband mailed a check to the Bank for $101.72 on May 29, 2000

sixteen

days after the due date.  In June 2000, Cappalli received a statement showing a balance of $22.88.  The new balance consisted of a $20 late payment fee and $2.88 in periodic finance charges that had accrued on the unpaid balance in May.  On appeal, Cappalli argues that the $22.88 the Bank billed her represented an interest charge of 391% in violation of her cardholder agreement and HOLA.

Section 1463(g) of HOLA provides, in relevant part, that "a [national] savings association may charge interest on any extension of credit . . . at the rate allowed by the laws of the State in which such savings association is located . . . ." 18 U.S.C. 1463(g)(1). Under the regulatory scheme of HOLA, late payment fees are considered "interest."  12 C.F.R.  560.110(a); see also Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 740 (1996).  Thus, we must determine whether the late payment charged by the Bank resulted in interest charges that exceeded the limits imposed by the laws of the state of Arizona.

The general usury statute in Arizona provides that, "Interest on any loan, indebtedness, judgement or other obligation shall be at the rate of ten percent per annum unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to."  Ariz. Rev. Stat.  44-1201(A) (emphasis added).  In this case, Cappalli and the Bank entered into a credit agreement that established a 21% Annual Percentage Rate ("APR") and a $20 late payment fee.  Cappalli argues that Section 44-1201(A) requires parties to establish a single rate of interest because the statute states that parties may contract for  "a" different rate.  Because both the APR and late fee payments are considered "interest" under 12 C.F.R.  560.110(a), Cappalli argues that having two different "rates" of interest violates the alleged requirement of a single rate.

As the District Court noted, however, "there is nothing in either Smiley or 560.110(a) that requires that the [APR] assessed on outstanding balances be treated as a ceiling that controls all . . . terms of the cardholder agreement that might fall under the definition of 'interest.'"  Dist. Ct. Op. at 6.  In other words, parties are free to contract for a different APR rate and a different late payment fee.  Even if the Bank had wanted to

combine the charges into a single figure, the Truth in Lending Act ("TILA") and its supporting regulations prohibit parties from including late fees within the APR. 15 U.S.C. 1601 et. seq.; Regulation Z, 12 C.F.R. 226.14(b), 226.6. Thus, not only was the separation of the APR and late payment fee permissible, it was required by law.

In the alternative, Cappalli argues that two other Arizona statutes prohibited the amount of the late fee. Sections 44-1205(B) and 44-6002(F) of the Arizona Revised Statutes place limits on how much banks may charge for late payments. Section 44-1205(B) applies to "revolving credit accounts," while Section 44-6002(F) applies to "retail charge accounts." Cappalli asserts that the account she held with the Bank qualifies under both statutes. Whether Sections 44-1205(B) or 44-6002(F) apply here, however, is irrelevant under the most favored lender doctrine.

The most favored lender doctrine states that "A [national] savings association located in a state may charge interest at the maximum rate permitted to any state-chartered or licensed lending institution by the law of that state." 12 C.F.R. 560.110(b) (emphasis added); see also Tiffany v. National Bank of Missouri, 85 U.S. 409, 413 (1873). Section 44-1201(A) is the general usury statute in Arizona. See, e.g., Aros v. Beneficial Arizona, Inc., 977 P.2d 784, 786 (Ariz. 1999); Morrison v. Shanwick Int'l Corp., 804 P.2d 768, 775 (Ariz. App. 1990). Thus, the Bank was permitted to charge Cappalli both the APR and late payment fee because, as discussed above, Section 44-1201(A) permitted the Bank to charge "any rate of interest" to which the parties agreed.

For the foregoing reasons, we will affirm the dismissal of Cappalli's suit.

TO THE CLERK OF THE COURT:
Kindly file the foregoing Memorandum Opinion.

/s/ Maryanne Trump Barry
Circuit Judge