[Civil No. 3302. Filed December 4, 1933.]

[27 Pac. (2d) 529.]

CHARLES KORRICK and BLANCHE KORRICK, His Wife, Appellants, v. WALTER K. TULLER, Appellee.

494

Messrs. Cunningham, Carson & Gibbons, for Appellants.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee.

ROSS, C. J.—This suit was commenced by plaintiff, Tuller, against defendants, Korrick, to reform a deed for mutual mistake in the description of land conveyed. The court tried the case without a jury and gave judgment for plaintiff, and the defendants have appealed.

In 1895 the then owner of the S. E. ¼ of section 29, township 2 south, range 3 east, divided the same into sixteen lots of ten acres each and called it Buena Vista tract, which was suburban to the city of Phoenix. The quarter-section was platted, showing location of lots and public highways or streets, and the plat was filed in the office of the county recorder of Maricopa county. Through mesne conveyances the plaintiff, Tuller, who resides in Los Angeles, became the owner of lots 1 and 8 of said subdivision, or twenty acres in compact form located as the E. ½ of the N. E. ¼ of the S. E. ¼ of said section. Its shape is that of a parallelogram; its length being 1,261.6 feet north and south and its width 631.2 feet east and west, if calculated according to the United States governmental survey lines, but, if calculated according to the plat of Buena Vista tract, the length and width

are reduced by the number of feet dedicated to the abutting streets.

Shortly before January 20, 1928, defendant Charles Korrick called on plaintiff at his office in Los Angeles for the purpose of trying to purchase a piece or parcel of said land as a site for a home he was then contemplating building. He wanted two and one-half acres and was willing to pay therefor $2,750 per acre. Plaintiff did not want to sell in parcels less than five acres, and asked $3,000 per acre. They separated with the understanding that future negotiations might be taken up in Phoenix. On January 20th, plaintiff wrote defendant that he was unable to come to Phoenix, but that Frank W. Shedd, his agent in Phoenix, was empowered to take up the matter with him and to go into an escrow agreement. On January 26th Shedd and Korrick came to an agreement under the terms of which Shedd, as the agent and trustee of plaintiff, agreed to sell and Korrick agreed to purchase two and one-half acres of said land at the rate of $2,750 per acre, and undertook to reduce their agreement to writing, such writing taking the form of an escrow agreement, and therein described the piece or parcel of land as follows: "S. ½ of S. ½ of S. E. ¼ of N. E. ¼ of S. E. ¼ of Sec. 29, Tp. 2 N., R. 3 E. of G. & S. R. B. & M., also known as S. ½ of S. ½ of Lot 8, Buena Vista Tract." The Phoenix Title & Trust Company's manager prepared and wrote the escrow agreement. Both Shedd and Korrick believed at the time of the execution of the escrow that the two descriptions therein covered the identical property. The description according to the plat of Buena Vista tract is two and one-half acres bordering on Palm Avenue and Seventh Street, and the description by legal subdivision includes in the two and one-half acres such streets to their centers.

The survey made of the ground according to the plat of Buena Vista tract gave defendant 158 feet

frontage on Seventh Street. If it had been surveyed according to the governmental lines, it would have given him 22½ feet less frontage on that street.

The land in question is a strip off the southerly part of lot 8, otherwise described as the southerly part of the E. ½ of the N. E. ¼ of the S. E. ¼ of said section 29, and is on the west side of Seventh Street, directly across from the Arizona Country Club.

On March 19, 1928, plaintiff himself wrote a deed conveying two and one-half acres to Korrick, and caused it to be executed and delivered by Shedd (to whom he had in the meantime deeded his twenty acres in trust), and was then paid for the land at the agreed price. This deed describes the premises as follows:

"The South half (S.½) of the South half (S. ½) of Lot 8, Buena Vista Tract, according to the plat on record in the office of the County Recorder of said Maricopa County, in Book 2 of Maps, page 46; said parcel containing (including streets) 2½ acres, more or less, subject to all encumbrances, conditions and restrictions of record."

The court found that both parties believed that the two descriptions of the land contained in the escrow agreement were of the identical piece or parcel of land; also that in their first proposals of sale and purchase they agreed that, if and when a deal should be made, the area sold should include as a part thereof the abutting streets to the center; also that plaintiff intended to sell and defendant Korrick intended to purchase the S. ½ of the S. ½ of the S. E. ¼ of the N. E. ¼ of the S. E. ¼ of said section 29; also that error of description in deed occurred through a mutual mistake. The judgment was that the deed be reformed as prayed unless defendants should pay for the overplus at the rate of $2,750 per acre within fifteen days.

This is an equitable proceeding. The parties, through carelessness, inadvertence or oversight, have made some mistakes, and not being able or willing to adjust them themselves, have come to the only tribunal authorized and empowered to help them out of their difficulties. They have acted upon an agreement as though its terms were clear and explicit, and by reason thereof the status of both parties has been very much changed; the one has paid the price of the land as he understood it, and the other has made a conveyance. They cannot be placed in *status quo*. Under the circumstances, the law steps in and lends itself to a rectification of their errors as nearly as may be and in accordance with the rules of equity.

Judging from the record, the plaintiff is a lawyer of considerable learning and experience in realty transactions, but equity will not bar its doors against him for that. It is said that "Even Demosthenes sometimes nodded in his orations." If a mistake is mutual and the court is satisfied thereof by clear and convincing proof, even so sacred an instrument as a deed, if founded upon sufficient consideration, will be reformed to carry out the intention of the parties thereto. Restatement of the Law of Contracts by American Law Institute, §§ 504, 506 and 509; 53 C. J. 941–945, §§ 59 and 60; 23 R. C. L. 327, § 20; *McMillon* v. *Town of Flagstaff*, 18 Ariz. 536, 164 Pac. 318. Defendant Korrick admits that he thought the descriptions in the escrow covered the identical piece of land. The employment of the two descriptions left it uncertain which one of the parcels described therein the parties intended to be conveyed. The mistake was clearly mutual, and the escrow agreement might have been reformed at the instance of either party upon a showing that their minds met on the identity of the property to be conveyed.

On January 28th, two days after the parties had executed the escrow agreement, Korrick employed a

surveyor to survey the land and gave him the two descriptions of it as his guide for locating it. The surveyor notified Korrick that the descriptions were not of the same identical parcel of land, whereupon Korrick told him to make the survey by the one that would give him the larger area. The survey was made according to the plat of Buena Vista tract. Korrick immediately took possession, began to build his residence and to make other improvements in the way of planting and fencing, covering within two feet the entire width of the tract. When the deed of the property was delivered to him on March 19th, he knew, although plaintiff did not know, that the description of the premises therein was of two and one-half acres excluding the abutting streets. Plaintiff thought he was deeding only two and one-half acres including the abutting streets to their centers, and to carry out such thought employed the quantitative words "containing (including streets) 2½ acres, more or less." The mistake in the deed was plaintiff's only; it was unilateral. But the rule is stated to be that "Where a written contract, conveyance or discharge owing to the fraud or misrepresentation of one party and the mistake of the other, fails to express the agreement which they had manifested an intent that the writing should express, the latter can get a decree for reformation of the writing, unless precluded by the Statute of Frauds." Sections 481 and 505, Restatement of the Law of Contracts (A. L. I.).

Where the reformation is sought because of the mistake of one party only, it is essential that fraud or inequitable conduct be found in the other. If as a matter of fact defendant Korrick agreed that when and if he purchased a home site from plaintiff there should be included in the area so bought and paid for the abutting streets to their centers, it would seem that he was taking an inequitable advantage of plain-

tiff in not informing him of the error of description the latter was laboring under immediately upon its being made known to him by the surveyor. His silence was an indication of a disposition to profit at plaintiff's expense because of the latter's ignorance of a fact well known to defendant. He knew that the escrow did not express their actual agreement although both parties had intended that it should. When he discovered the error, knowing as he did that plaintiff was laboring under the belief that the two descriptions were the same, candor and frankness should have prompted him to inform plaintiff of the error. Instead he took advantage of plaintiff's ignorance, to the latter's injury and to his profit. His conduct, we believe, may with propriety and justice be characterized as inequitable. Perhaps the course he adopted would be considered just another business transaction, but we cannot accept this standard as proper.

The general rule with reference to the quantity of proof necessary to sustain an affirmative is not applicable to the reformation of a written instrument. The party who seeks to have a written conveyance reformed is required to prove the necessary facts for the allowance of such remedy ''by clear and convincing evidence and not by a mere preponderance.'' Section 511, Restatement of the Law of Contracts.

53 Corpus Juris 1025, section 196, states the rule as follows:

''There is a presumption of law that a written instrument was carefully prepared and executed, that the parties knew its contents, and that it speaks the final agreement of the parties, and the burden is on the party seeking reformation to produce evidence sufficient to overcome such presumptions by clear and convincing proof to the contrary. . . . ''

We have carefully read the evidence, and we find therein that the plaintiff's and defendant's testimony

as to the original agreement and understanding is in sharp conflict. Witness Shedd, however, testified that defendant had stated to him and plaintiff after the survey of the land that the description in the deed was a mistake and that he would correct it to conform with plaintiff's contention. Numerous letters passed between plaintiff and defendant about the matter, and in defendant's letters he did not deny the error, but gave one reason or another for postponing the settlement that plaintiff was insisting upon. It was for the trial court to weigh this testimony, and, if he believed that of the plaintiff, which he evidently did, we cannot say that it was not clear and convincing.

The plaintiff did not plead in his complaint mistake on his part and fraud or inequitable conduct on the part of defendants. In his complaint he bases his right to have the deed reformed upon mutual mistake only. Because of this situation, we are called upon to decide, inequitable conduct and mistake clearly appearing although not pleaded, whether the judgment of reformation should be sustained. The general rule is that fraud must be pleaded and proved in this kind of action. 23 R. C. L. 362, § 59. The evidence submitted under the issues appears to have pretty thoroughly covered all the facts of the transaction, as much so indeed as if fraud had been alleged. If the case should be reversed and remanded on the ground that the judgment is not within the issues, and the plaintiff, as he would have a right to do, should amend his pleadings to allege mistake on his part and unconscionable conduct on the part of defendants in failing to disclose the mistake in description as soon as discovered, the evidence thereon would not be different from what it was in the present case. In such circumstances it would seem that the variance should be treated as immaterial.

Plaintiff cites 53 Corpus Juris 1025, section 195, and *McCormick Harvesting Machine Co.* v. *Woulph,* 11 S. D. 252, 76 N. W. 939, and *James* v. *Cutler,* 54 Wis. 172, 10 N. W. 147, as authority sanctioning this position. The text in Corpus Juris reads:

"But a variance may be immaterial and not fatal; thus, there is authority for the holding that where mutual mistake is alleged, but the proof shows mistake on one side and fraud on the other, relief will be granted. The decree will not be disturbed because of variance between the proof and the decree."

This text is supported by the two cases cited.

We have concluded that the judgment ought to be affirmed, with this proviso: That the defendants be given thirty days from the date of the filing of the *remittitur* in the superior court in which to pay the overplus, at the rate of $2,750 per acre; but, if they fail to make such payment, including legal interest from March 19, 1928, on or before thirty days, that the deed be reformed as prayed for in plaintiff's complaint.

LOCKWOOD and McALISTER, JJ., concur.