NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HSBC BANK USA, N.A., *Plaintiff/Appellee,*

*v.*

JOSHUA CLUFF, et al., *Defendants/Appellants.*

No. 1 CA-CV 17-0627
FILED 10-18-2018

Appeal from the Superior Court in Navajo County
No. S0900CV201400243
The Honorable Dale P. Nielson, Judge

**AFFIRMED**

COUNSEL

Fidelity National Law Group, Phoenix
By Patrick J. Davis, Jamey A. Thompson
*Counsel for Plaintiff/Appellee*

Ramras Legal, PLC, Phoenix
By Ari Ramras
*Counsel for Defendants/Appellants Joshua and Jennifer Cluff*

The Shumway Group, Scottsdale
By Jeff A. Shumway
*Co-Counsel for Defendants/Appellants Curtis and Susan Cluff; Cluff Family Trust*

Weinberger Law, Scottsdale
By Brian A. Weinberger
*Co-Counsel for Defendants/Appellants Curtis and Susan Cluff; Cluff Family Trust*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

**¶1**     Co-defendants Curtis Cluff ("Curtis") and Susan Cluff (collectively the "Cluffs"), Joshua Cluff ("Joshua") and Jennifer Cluff (collectively the "Cluff Children"), and the Cluff Family Trust (collectively "Appellants") appeal the superior court's grant of summary judgment in favor of plaintiff HSBC Bank USA, N.A. ("HSBC"). HSBC is the trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR7 ("Wells Fargo").

**¶2**     After the Cluffs defaulted on payments due under a promissory note secured by a deed of trust encumbering their vacation home ("Bank DOT"), HSBC as trustee for the Bank DOT ordered a trustee's sale on the property. After the sale, HSBC discovered a mistake in the Bank DOT's legal description that omitted a majority of the land intended to secure the underlying note. In the time between the recognition of the mistake and the filing of this lawsuit, a second note and deed of trust were executed against the property. After the filing of this lawsuit to reform the Bank DOT and quiet title, the Cluff Children obtained an assignment of the second note and deed of trust. This assignment introduced issues of seniority in lien status as to the property, hindering HSBC from reforming the Bank DOT and taking the remaining property free and clear.

**¶3**     Appellants raise numerous issues, arguing they were entitled to summary judgment in their favor and the superior court committed

various errors warranting reversal. We agree with the superior court, however, that HSBC was entitled to take the entire Cluff property at the time of the trustee's sale, and the trustee's deed and the Bank DOT should be reformed and title quieted in HSBC's favor. Furthermore, Joshua Cluff's recordation of the second lien constituted a groundless recordation in violation of Arizona Revised Statutes ("A.R.S.") section 33-420(A), and he is precluded from protection under the shelter doctrine. Finally, we find no abuse of discretion in the superior court's grant of attorneys' fees. Consequently, we affirm.

## FACTS AND PROCEDURAL HISTORY

*I.        Deed of Trust Creation and Trustee's Sale of the Pinedale Property*

¶4        On February 23, 2006, Curtis and Susan Cluff executed a promissory note in favor of Wells Fargo in the amount of $926,500. The note was secured by a deed of trust encumbering their vacation property located in Pinedale, Arizona (the "Pinedale Property"), for the same amount. The property consists of five parcels covering fourteen acres of land, including one parcel with a main house and a guest house. An appraisal by Wells Fargo indicated that all five parcels together were worth $1,425,000 in 2006. The bank's land appraiser never assessed each parcel individually, but instead made one valuation including all five parcels. Although prior communication between Wells Fargo and the Cluffs indicated that all five parcels would be required to secure the loan, the Bank DOT only contained the legal description for one, unimproved parcel of land ("Parcel #1"). The legal description, prepared by Wells Fargo, was written in a "metes and bounds" form, so it was not apparent from the text that any particular part of the Pinedale Property was left out of the description.

¶5        The Cluffs[1] made timely payments on the loan from 2006 to 2012. In June 2012, the Cluffs defaulted on the loan and requested a loan modification through Wells Fargo's home mortgage department. Throughout the process, the Cluffs communicated their understanding to Wells Fargo that, if the bank were to order a trustee's sale, they would lose all five parcels, including the parcel with the main house. Efforts to modify the loan failed, and the Cluffs prepared to "short sell" the parcel of land

---

[1]        Sometime after the loan execution, the Cluffs transferred title to the Pinedale Property into the Cluff Family Trust. The Cluffs are trustors for the trust and their six children serve as trustees and beneficiaries.

containing the main house ("Parcel #2") to repay the outstanding loan balance. During the preparation for the short sale, however, the Cluffs discovered that the Bank DOT only encumbered Parcel #1. The Cluffs then cancelled the short sale so that Wells Fargo could execute a trustee's sale pursuant to the Bank DOT. The Cluffs attempted to alert Wells Fargo about the discrepancy, but they did not sufficiently explain the error to the bank in time to stop the trustee's sale. Throughout this process, Wells Fargo believed it was selling the entire Pinedale Property. At the December 2012 trustee's sale, HSBC[2] as trustee for Wells Fargo entered a successful credit bid for the full amount outstanding on the loan and costs associated with the sale. The trustee's deed delivered upon the sale, however, transferred title to HSBC as to Parcel #1 only. At the time of the trustee's sale, Parcel #1 was worth $70,000 and the Cluffs owed more than $900,000 on the loan. After the trustee's sale, HSBC realized the mistake in the legal description. On October 3, 2013, HSBC issued a claim on Wells Fargo's title insurance policy.

## II. *Joshua Cluff's Attempted Purchase of the Castle DOT*

¶6 After HSBC discovered the mistake but before it initiated this litigation, Joshua Cluff and his wife Jennifer Cluff were attempting to purchase a new home. Joshua is the son of Curtis and Susan Cluff. The Cluff Children found their "dream home" but could not finance the purchase through a bank. Curtis agreed to help the Cluff Children finance the purchase. The seller of the home, Castle Property Investments, LLC ("Castle") agreed to a financing deal with the Cluff Children and Curtis. As a part of the deal, Curtis agreed to secure a bridge home loan for the property using Parcel #2 of the Pinedale Property as collateral. Joshua and Curtis assured Castle that once the Cluff Children's former home sold, they would use those proceeds to pay off the Castle bridge loan. Castle agreed to give Curtis and Joshua 180 days to sell the former residence and pay the loan. In November 2013, a promissory note and deed of trust were executed in the amount of $183,000. The note ("Castle Note") and the deed of trust ("Castle DOT") were in Curtis' name alone.

¶7 In April 2014, Fidelity National Law Group ("Fidelity"),[3] as trustee for Wells Fargo, filed an action on behalf of HSBC in the Navajo

---

[2] Wells Fargo assigned the Bank DOT to HSBC in May 2012.

[3] Fidelity is counsel for Wells Fargo's title insurer. This action arises from the title insurance claim made by Wells Fargo, and under the terms of

County Superior Court to reform the Bank DOT and trustee's deed (Count 1), to quiet title against the Cluffs and the Cluff Family Trust as to Parcel #2 and the remaining three parcels of land (Count 2), and, in the alternative, to create an equitable lien on the four parcels of land (Count 3). HSBC filed a notice of lis pendens in April 2014.

**¶8** A few months later in August 2014, the Cluff Children sold their former residence. Curtis then emailed Castle to indicate that, instead of Joshua paying off the loan in full, Curtis would have a "friend" pay for an assignment of the loan. The "friend" taking the assignment was really just Joshua Cluff. Joshua used the proceeds of his home sale to pay Castle the outstanding balance on the loan, and Castle executed an assignment of the Castle DOT and underlying note. This transaction perpetuated the lien encumbering Parcel #2, and thus continued to frustrate HSBC's efforts to reform the original Bank DOT and obtain quiet title. HSBC ultimately amended its complaint to add a fourth claim against the Cluff Children for "recording a wrongful lien" pursuant to A.R.S. § 33-420 (Count 4).

**¶9** In September 2016, the Cluffs moved for summary judgment, asserting that HSBC's claims were barred by the statute of limitations. HSBC cross-moved on the same issue, and the superior court granted HSBC's motion. In a separate motion, the Cluffs also moved for summary judgment as to Counts 1-3 in the amended complaint. Again, HSBC cross-moved on the same issue and the superior court granted HSBC's motion. In the same motion, HSBC also requested entry of summary judgment as to Count 4 against Joshua and Jennifer Cluff.[4] Joshua and Jennifer cross-moved on the same issue, and the superior court granted HSBC's motion.

---

the insurance policy, Fidelity stepped in to litigate the issues arising from the claim.

[4] While HSBC did not explicitly name the Cluff Children in their motion for summary judgment, HSBC did argue in its motion that it was entitled to relief as to Count 4. The Cluff Children did not address this procedural defect and instead filed a substantive response and cross-motion for summary judgment. HSBC filed a substantive memorandum which, *inter alia*, addressed the Cluff Children's cross-motion, and the issue concerning the relief sought under Count 4 was squarely before the court. HSBC's failure to explicitly name the Cluff Children in its initial motion was, at the most, a procedural error, which was waived by lack of objection and the subsequent briefing on the merits. *Morrison v. Shanwick Intern.*

¶10        The superior court entered judgment in HSBC's favor on August 23, 2017.  The Appellants' timely appeal followed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## ANALYSIS

### I.        Standard of Review

¶11        We review the grant of summary judgment *de novo*, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002) (citation omitted).  Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).  While a party may present "genuine" issues of fact in opposition to summary judgment, disputes as to those issues may still be insufficient to preclude summary judgment if the facts are not material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, a fact must "affect the outcome of the suit under the governing law."  *Id.*  The trial court must use the substantive law to identify which facts are material.  *Id.*  Further, we will affirm summary judgment if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent.  *Orme Sch.*, 166 Ariz. at 309.  Evidence that creates only a "scintilla" of doubt is insufficient to withstand a motion for summary judgment.  *Id.*

### II.        The Superior Court Did Not Err in Granting Summary Judgment as to Counts 1-3 against the Cluffs and the Cluff Family Trust

#### A.        Statute of Limitations

¶12        The Cluffs argue that the superior court erred in granting summary judgment precluding their statute of limitations defense.  They assert *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355 (App. 1985), controls HSBC's claims for relief, and the three-year statutory period under A.R.S. § 12-543 began to run in 2006, when HSBC should have known about the mistaken legal description, and expired in 2009.  HSBC responds that *Transamerica* is inapplicable and the Cluffs have produced no information that would allow the court to find that Wells Fargo had reason to investigate

_____

*Corp.*, 167 Ariz. 39, 42 (App. 1990) (explaining any objection to a procedural defect in the filing of a motion for summary judgment is waived where the aggrieved party fails to timely object).

the sufficiency of the Bank DOT any time before the 2012 default, or that there was a genuine factual issue concerning same. The superior court concluded *Transamerica* is inapplicable and HSBC had no reason to know of the mistake until the payment default in 2012. We agree with the superior court.

¶13 Reformation is a claim that seeks relief based on fraud or mistake. *Long v. City of Glendale*, 208 Ariz. 319, 326, ¶ 17 (App. 2004). Such a claim does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* In addition to discovering the facts around the mistake, a plaintiff must suffer an injury giving rise to its cause of action in order to trigger the statute of limitations. *See Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32 (1998) (stating a statute of limitation begins to run when the plaintiff possesses "a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury").

¶14 The Cluffs argue that the holding in *Transamerica* requires this court to hold that, as a matter of law, HSBC was on notice of the legal description mistake as of the 2006 Bank DOT recordation. The Cluffs' reliance on *Transamerica* is misplaced. It is true the *Transamerica* court stated that the recordation of a deed constitutes constructive notice under A.R.S. § 33-416, and "[t]he statutory period [for a claim based on the recorded instrument] may begin to run on the date of recording if the recorded deed sets forth facts from which the aggrieved party should have realized it had a cause of action." *Transamerica*, 145 Ariz. at 358. Nonetheless, we agree with HSBC that *Transamerica* is distinguishable from the present case. In *Transamerica*, the plaintiff was a creditor suing to recover money owed after the debtor fraudulently transferred his property to a third party via quit claim deed. *Id.* at 357. The creditor was not a party to the deed at issue, and the court determined that anyone in the creditor's position was put on "constructive notice" of any fraud in the plain language of the quit claim deed when the deed was recorded by the third party. *Id.* at 358.

¶15 Here, unlike in *Transamerica*, Wells Fargo was a party to the recorded deed at issue. Therefore, after the Bank DOT's recordation, constructive notice did not apply to charge Wells Fargo or HSBC, as a subsequent assignee/trustee, with knowledge of any mistake in the deed.[5]

---

[5] Even assuming, *arguendo*, that HSBC was required to search the record relating to the May 2012 assignment of the Bank DOT, the three-year statute of limitation had not run by the time this litigation began in April 2014.

*Mountain States Tel. & Tel. Co. v. Kelton*, 79 Ariz. 126, 130-31 (1955) (explaining a recorded instrument is constructive notice only to those bound to search for it); *see also Home Owners' Loan Corp. v. Bank of Ariz.*, 54 Ariz. 146, 158 (1939) (explaining an allegation of negligence in drafting a deed is insufficient to defeat a reformation action because "[m]utual mistakes are always the result of some negligence . . . [i]f negligence were a defense in this kind of action, there would be no ground for reformation for mistake, as mistakes nearly always presuppose negligence."). Wells Fargo had no duty to review the Bank DOT for a mistake after its recordation, and the first event that triggered the statute of limitations occurred when the Cluffs defaulted in 2012. Because the Cluffs have produced no evidence opposing this fact[6] or pointing to an earlier injury, HSBC is entitled to summary judgment on the statute of limitations claim. *W.J. Kroeger Co. v. Travelers Indem. Co.*, 112 Ariz. 285, 286 (1975) ("If the moving party on a motion has made a prima facie showing that no genuine issue of material fact exists, the opponent of the motion has the burden to produce sufficient evidence that there is indeed an issue.").

### B. Reformation and Quiet Title[7]

#### i. Reformation

**¶16** As a preliminary matter, the Cluffs argue the trustee sale extinguished the Bank DOT and the court therefore did not have the ability to reform the deed. This argument is inapposite because reformation, being a remedy in equity, is appropriate to correct a mutual mistake in deed formation even after a property has been foreclosed. *See e.g., Home Owners' Loan Corp.*, 54 Ariz. at 153; *Chantler v. Wood*, 6 Ariz. App. 134, 138 (1967); *Stubbs v. Standard Life Ass'n*, 242 P.2d 819 (1952).

**¶17** The Cluffs next assert that the superior court erred in granting summary judgment in favor of reformation because HSBC did not by clear and convincing evidence show "the minds of the parties had met on a

---

[6] To the contrary, Curtis admitted in his deposition that it was not until October 2012 that he realized the mistake and attempted to put Wells Fargo on notice.

[7] In the alternative, HSBC requested the court place an equitable lien on the four parcels to reflect the amount still owed to the bank. On appeal, however, the parties only address the superior court's ruling on reformation and quieting title in favor of HSBC, so that is what we address on appeal.

definite intention" before the Bank DOT formation. The Cluffs claim there was never a definitive agreement as to which parcels would be taken as security, so there could be no mutual mistake made in executing the deed.

**¶18**      Reformation is an equitable remedy available to correct a deed to reflect the parties' intent. *Korrick v. Tuller*, 42 Ariz. 493, 497 (1933); *see also Chantler*, 6 Ariz. App. at 138 ("Reformation is the proper action to correct an erroneous description arising from mutual mistake."). A party seeking reformation of a written agreement must "show that a definite [i]ntention on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution." *State v. Ashton Co.*, 4 Ariz. App. 599, 602 (1967). The definite intent must be shown by clear and convincing evidence. *Long*, 208 Ariz. at 332, ¶ 47.

**¶19**      The Cluffs assert they believed at the time of the loan only some, not all, of the land parcels would be encumbered under the Bank DOT. To support this assertion, the Cluffs rely on an alleged conversation between Curtis and a Wells Fargo loan officer before execution of the Bank DOT. Curtis testified that he left the decision to the sole discretion of Wells Fargo regarding which parcels of land would be encumbered, and Wells Fargo on its own made a unilateral mistake as to which parcels were chosen. In addition, the Cluffs highlight the fact that Wells Fargo ordered two appraisals because of confusion regarding the different character of each parcel of land. They claim this fact supports their argument that there was a misunderstanding as to the amount of land being secured under the note.

**¶20**      HSBC asserts that both the Cluffs' pledge of all five parcels in their written loan application and their communication during the loan modification process support a finding that all five parcels of land were intended to be a part of the Bank DOT.[8] Alternatively, HSBC claims the Cluffs bore the risk of not knowing which parcels of land were encumbered and the Cluffs' alleged confusion does not prevent reformation of the Bank DOT.

**¶21**      We agree with the superior court's determination that the Cluffs presented "no compelling evidence to support the defendants['] claim that the bank [intended to] secure[] a nearly million dollar loan with a vacant lot worth approximately $50,000." Furthermore, we agree that the disputes regarding the land appraisal process and the conversations during

---

[8]      HSBC's attorney also argued at the motion hearing that, after the loan was made, the Cluffs claimed a home loan income tax deduction as to the entire Pinedale Property.

the loan application process did not create a genuine issue of fact sufficient to preclude summary judgment. Regardless of whether Curtis had a conversation with the bank about taking more or less than the five parcels, the Cluffs' actions after the loan execution support a finding that they believed the entire Pinedale Property was included. In addition, the record shows that the behind-the-scenes dispute regarding the land appraisal was whether or not Wells Fargo could extend a loan to the Cluffs at all; the conversations were not about the amount of land Wells Fargo wanted to use to secure the loan. Both the loan underwriter and the land appraiser testified that they always thought the loan was being secured by all five parcels of land.

**¶22** Because we find the record contains substantial evidence that both Wells Fargo and the Cluffs operated under the belief the Bank DOT encumbered all five parcels of land before and after the Bank DOT execution, we affirm the superior court's grant of summary judgment in favor of HSBC on the reformation claim. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 266 (App. 1983) ("The acts of the parties themselves, before disputes arise, are the best evidence of the meaning of doubtful contractual terms.").

### ii. Quiet Title

**¶23** The Cluffs argue on appeal that the superior court erred in reforming the Bank DOT, but the Cluffs have submitted no argument against the court quieting title in HSBC's favor.[9] An action to quiet title is equitable in nature. *Kennedy v. Morrow*, 77 Ariz. 152, 155 (1954); *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 266, ¶ 12 (App. 2013). Even if reformation were not granted, the superior court still had the authority to quiet title in HSBC's favor. *See id.* A party seeking to quiet title in his or her favor must show that it would be equitable for the court to do so. *See id.* Here, the Cluffs admit that, if allowed to keep the remaining four parcels of land at the Pinedale Property, they will avoid paying the over $900,000 they owe to HSBC under the 2006 promissory note. The purpose of the court exercising its discretion in equity is to avoid a windfall for one party over the other. *Id.* Therefore, the superior court did not err in quieting title in favor of HSBC.

---

[9] The Cluffs provide a heading in their opening brief's table of contents stating the court erred in granting declaratory relief, but they have failed to provide any argument for their position.

### C. The Cluffs' Equitable Defenses

**¶24** Additionally, we conclude that the Cluffs did not present sufficient evidence to establish genuine issues of material fact concerning their "unclean hands" and laches defenses. The Cluffs argue that HSBC waited an unreasonable amount of time before filing a claim with its title company and initiating this action. It was this delay, the Cluffs argue, that allowed the second lien on the home to be recorded and cloud the title. We disagree.

#### i. Unclean Hands

**¶25** We find no merit in the Cluffs' assertion of their unclean hands defense. Numerous instances in the record support the superior court's conclusion that HSBC was under the reasonable impression throughout the trustee's sale process that it was entitled to the entire Pinedale Property. In addition, an "unclean hands" defense is premised on the principle that one seeking equity must come with clean hands. *Weiner v. Romley*, 94 Ariz. 40, 42-43 (1963). The record further supports that, by executing a scheme to prolong the life of the second lien, any culpability on the part of HSBC pales in comparison to that of the Cluffs'. Therefore, the superior court correctly denied the Cluffs' request for summary judgment as to their unclean hands defense. *Manning v. Reilly*, 2 Ariz. App. 310, 314 (1965) ("The application of the 'clean hands' doctrine rests in the sound discretion of the trial court . . . and we find no abuse of discretion.").

#### ii. Laches

**¶26** "When determining whether laches should preclude a claim, we consider all factors, including not only the length of the delay, but also the magnitude of the problem at issue." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 560, ¶ 13 (2009) (citation omitted). Delay alone will not establish a laches defense. *Id.* at 558, ¶ 6. Rather, the delay must be unreasonable and result in prejudice "either to the opposing party or to the administration of justice, [] which may be demonstrated by showing injury or a change in position as a result of the delay." *Id.*

**¶27** Here, the Cluffs assert that their ability to use the Pinedale Property as collateral will be prejudiced. They also claim they will have to use other property to secure the Castle DOT. This record, however, is replete with evidence supporting HSBC's argument that the continued existence of the second lien was solely caused by the deliberate actions of the Cluffs and their children. Prejudice of the Cluffs' sole creation cannot support a laches defense. Under these uncontested facts, the Cluffs have

no basis to argue that they will be prejudiced by the reformation of the deed and quieting of title in favor of HSBC. The superior court correctly denied summary judgment as to the laches defense.

III. *Superior Court Did Not Err in Granting Summary Judgment as to Count 4 Against The Cluff Children*

A. *Shelter Doctrine*

**¶28** The Cluff Children repeatedly assert that they are not subject to liability for recording a groundless lien under A.R.S. § 33-420 because they have a superior position to HSBC under the protection of the "shelter doctrine." They assert that because Joshua bought the Castle DOT from a bona fide purchaser for value ("BFP"), the shelter doctrine protects him from liability—even for perpetuating fraudulent acts. The Cluff Children are mistaken in this interpretation. The shelter doctrine protection is not an absolute bar to liability for any wrongdoing on the part of a subsequent purchaser. *See Koch v. Kiron State Bank*, 297 N.W. 450, 464 (Iowa 1941) ("[A] bona fide purchaser can transfer a good title even to one who purchases with notice of equitable claims of others . . . [but] the protection does not extend to one guilty of constructive fraud, even if he purchases from a bona fide purchaser."). It is instead a qualified protection with the purpose of facilitating land ownership. *See Strekal v. Espe*, 114 P.3d 67, 74 (Colo. App. 2004) (stating the shelter rule exists to "prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell") (citation omitted). Therefore, a subsequent purchaser stands in the position of the BFP and generally cannot claim protections beyond those a BFP would have had. *See W.W. Planning, Inc. v. Clark*, 10 Ariz. App. 86, 89 (1969).

**¶29** If Castle assumed the position of Joshua as the party who elected not to extinguish the loan upon full payment, that is, only to prolong the recordation of the lien to interfere with HSBC's reformation efforts, Castle would not be shielded from A.R.S. § 33-420 liability. Yet, the Cluff Children somehow believe this protection magically appears because Joshua purchased the lien from a BFP. The law does not allow a subsequent purchaser any rights or protections from liability that the BFP did not have, and it does not reward those who seek protection under the rule to perpetuate bad acts. Any interpretation of the law otherwise is contrary to the intent of the rule.

###### B. A.R.S. § 33-420(A)

**¶30**　　　　The Cluff Children next assert that there was no evidence to support the conclusion that Joshua knew or should have known the assignment and recordation of the lien was groundless or invalid. Both parties focused their summary judgment arguments on whether or not the assignment was a legally valid contract. The superior court determined that Joshua satisfied the Castle Note when he paid Castle the $183,000 from his house sale, and no legal assignment of the Castle DOT occurred because the debt was satisfied. The court further determined that the recordation of the invalid assignment was "a ruse to put [Joshua] into a superior position to the bank regarding the house in question."

**¶31**　　　　The superior court determined that the Castle DOT was satisfied, but for the purposes of deciding this appeal, we construe the facts in a light most favorable to the Cluff Children. Nonetheless, even assuming that the assignment was valid, this determination does not affect their liability under A.R.S. § 33-420(A). *Anderson*, 477 U.S. at 248 (explaining that an issue of fact must "affect the outcome of the suit under the governing law").

**¶32**　　　　A.R.S. § 33-420(A) allows a property owner to recover damages and attorneys' fees against a person who records a lien or encumbrance against real property "knowing or having reason to know that the document is forged, groundless . . . or is otherwise invalid." The recording of a document is groundless or invalid pursuant to the statute "only where [it] . . . has no arguable basis or is not supported by any credible evidence." *SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 281, ¶ 31 (App. 2011) citing *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 621 (App. 1991). The term "groundless" is equivalent to the term "frivolous." *Id.* Accordingly, a frivolous recording is one that is "totally and completely without merit" or "without merit and futile." *SWC*, 228 Ariz. at 281, ¶ 31 (citation omitted).

**¶33**　　　　Contrary to the Cluff Children's argument, HSBC presented compelling evidence in its motion for summary judgment and at the motion hearing to support the superior court's finding that Joshua obtained and frivolously recorded the lien assignment as "a ruse" to disrupt HSBC's reformation litigation with his parents. First, because HSBC filed a lis pendens, Joshua was put on constructive notice there was a dispute as to the ownership of the Pinedale Property due to a mistake in the Bank DOT. Second, Joshua had the ability to pay off the loan in full, but he instead changed the plan at the last minute. He gave conflicting testimony as to

why the plan changed, and he has shown no intent to collect on the Castle Note. Neither Curtis nor the Cluff Family Trust have made any payments towards the Castle Note. Finally, and most compelling, even the Cluff Children's counsel admitted at the motion hearing that the court can assume Joshua purchased and recorded the loan in bad faith.

**¶34** In support of the Cluff Children's position, Joshua produced an affidavit stating he would not have paid $183,000 to Castle without Castle agreeing to assign the loan, and therefore the Castle Note would still be outstanding today if there was no assignment. The Cluff Children argue this shows that the assignment was valid and with merit. But this speculative statement does not create a genuine issue of material fact needed to withstand a motion for summary judgment. *Orme Sch.*, 166 Ariz. at 309 (stating evidence that creates only a "scintilla" of doubt is insufficient to withstand a motion for summary judgment). Contrary to Joshua's affidavit, HSBC produced evidence that Castle, Curtis, and Joshua agreed beforehand that the sale proceeds of Joshua's former house would be immediately used to pay off the debt. Castle gave Curtis and Joshua multiple time extensions to sell the home, and Joshua paid the interest charges incurred for the time extensions. Only after the filing of this lawsuit was there any conversation about obtaining an assignment of the loan. Considering this evidence, and the evidence mentioned above, Joshua's affidavit did not constitute more than a scintilla of evidence, and was insufficient to create a genuine dispute as to the merits/good faith basis to request the assignment. As such, the superior court did not err in granting summary judgment in HSBC's favor on the groundless lien claim.

### IV. Attorneys' Fees

**¶35** The Cluffs challenge the superior court's award of $126,857.50 in attorneys' fees and $8,886.45 in costs to HSBC. The Cluff Children challenge the superior court's award against them of $16,607.50 in attorneys' fees and $794.85 in costs to HSBC. We review a court's award of attorneys' fees for an abuse of discretion. *Cohen v. Frey*, 215 Ariz. 62, 68, ¶ 18 (App. 2007). "We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) (citations omitted).

#### A. Fees to Fidelity's In-House Counsel

**¶36** Both the Cluffs and the Cluff Children argue that HSBC's attorneys are not entitled to their request for attorneys' fees because HSBC was represented by in-house counsel for their title insurer, Fidelity. First,

they assert that the case law cited by Fidelity does not support an award of fees to in-house counsel. Second, they argue that the attorneys did not provide any evidence of their actual costs incurred.

**¶37**       Fidelity cited *Lacer v. Navajo Cty.*, 141 Ariz. 392 (App. 1984), to support their request for fees and costs. In *Lacer*, the Court of Appeals "set forth some general guidelines to assist the County <u>and future parties</u> seeking recovery of their attorney's fees for in-house counsel." *Id.* at 396 (emphasis added). The court further explained "[w]e realize that governmental <u>and private organizations</u> will vary as to their method of determining hourly costs[,] [w]e require only that the party requesting an award of attorney's fees provide the court with a 'reasonable basis' for its stated hourly cost." *Id.* (emphasis added). Contrary to the Appellants' argument, the language in *Lacer* clearly supports a fee award to in-house attorneys for private organizations such as Fidelity. In addition, Fidelity's fee affidavit stated their hourly rate was based on "attorneys' salaries . . . costs of office space, support staff, office equipment and supplies, law library and continuing legal education." Accordingly, the superior court acted well within its discretion in awarding fees.

> B.      *Fees under A.R.S. § 33-420(A)*

**¶38**       The Cluff Children argue the superior court erred in awarding attorneys' fees because the issues arising from A.R.S. § 33-420 were never briefed or argued. While the Cluff Children are correct that HSBC's claim under § 33-420(C) was never briefed or argued, the applicability of § 33-420(A) to the facts before the court was expressly argued. Both counsel for HSBC and the Cluff Children addressed the invalidity of the recorded lien under A.R.S. § 33-420(A) in their motion papers and engaged in a detailed argument at the summary judgment hearing concerning same. To prevail under A.R.S. § 33-420(A), a plaintiff must show 1) the defendant caused a lien to be recorded and 2) the lien was "forged, groundless, contains a material misstatement or false claim or is otherwise invalid." The Cluff Children never disputed that Joshua recorded the lien. The parties argued and the superior court decided that the lien was invalid. In addition, Fidelity's attorneys submitted numerous time entries in its application for attorneys' fees indicating the work done on the claim directed at the Cluff Children. Because we have determined the court did not err in finding that the Cluff Children violated A.R.S. § 33-420(A), we find no error in the superior court's award of attorneys' fees and costs under the statute.

¶39        The Cluff Children also argue that HSBC is not entitled to relief under A.R.S. § 33-420(A) because the bank was not an "owner" or "beneficial title holder" as required under the statute.  The Cluff Children never raised this issue in their answer to the amended complaint, their response to HSBC's motion for summary judgment, or at oral argument.  They focused only on their assertion that the assignment was valid and they were protected from liability by the shelter doctrine.  The Cluff Children may not now raise a new argument on appeal.  *Lansford v. Harris*, 174 Ariz. 413, 419 (App. 1992) ("On appeal from summary judgment, the appellant may not advance new theories or raise new issues to secure a reversal.").

### C.        *Fee Award Against Jennifer Cluff*

¶40        The Cluff Children also argue that the superior court's award of attorneys' fees against Jennifer Cluff was improper.  They assert the language of the assignment clearly identified that Joshua was taking as to his "sole and separate property," so any fee award as to A.R.S. § 33-420 cannot be recovered from their marital property.  HSBC argues that because 1) both of the Cluff Children are named as defendants and 2) the actions taken in connection with the wrongful lien claim were done with marital assets, they are entitled to a fee award against both Cluff Children.  We agree with HSBC and uphold the superior court's judgment against Jennifer Cluff.

¶41        It is well settled law in Arizona that the name on the title of an asset is not dispositive as to its characterization as personal or marital property.  A.R.S. § 25-211; *Ariz. Cent. Credit Union v. Holden*, 6 Ariz. App. 310, 313 (1967) (stating property acquired by a spouse during marriage is presumed to be community property irrespective of which spouse holds legal title).  Additionally, property purchased with community funds remains community property.  *See Potthoff v. Potthoff*, 128 Ariz. 557, 562 (App. 1981) (explaining the mere mutation in form of marital property or separate property does not change the character of the property).  The Cluff Children have provided no evidence to rebut the presumption that the $183,000 used to pay Castle was community property.  *Armer v. Armer*, 105 Ariz. 284, 288 (1970) (explaining all property acquired in name of either spouse after marriage is presumptively community property, and such presumption may be overcome only by showing of clear and convincing evidence).  The funds used to pay Castle were obtained through selling their former marital residence, and absent the title being in Joshua's name, there is no evidence that they had an agreement making the assignment Joshua's separate property.  Therefore, the superior court did not abuse its

discretion in awarding fees and costs against both Joshua and Jennifer Cluff.

### D. *Appeal Fees Under ARCAP 21*

**¶42** Fidelity requests an award of costs and attorneys' fees on appeal pursuant to Arizona Rules of Civil Appellate Procedure ("ARCAP") 21. Fidelity cites A.R.S. §§ 12-341.01, -342 (the Cluffs) and A.R.S. §§ 33-420, 12-342 (the Cluff Children) as the substantive authority for the award. We award Fidelity their reasonable attorneys' fees in an amount to be determined upon compliance with ARCAP 21, and allowable costs associated with this appeal.

### CONCLUSION

**¶43** For the foregoing reasons, we affirm the superior court's grant of summary judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA